**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**9/22/2021 10:05 AM**
**CLERK OF THE COURT**
**Leanne LeCompte**

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

TAMIRA SMILEY,

     Plaintiff,

v.                                              Case No. D-202-CV-2021-05548

NEW MEXICO HUMAN SERVICES
DEPARTMENT,
DUSTIN ACKLIN, in his official capacity
with the NMHSD,
CRYSTAL MARTINEZ, in her official capacity
with the NMHSD,

     Defendants.

## NOTICE OF APPEAL AND COMPLAINT FOR DAMAGES

Plaintiff Tamira Smiley, by and through her counsel, Roybal-Mack & Cordova, P.C.

(Amelia P. Nelson), pursuant to the New Mexico Rules of Civil Procedure, laws of the State of

New Mexico and 42 U.S.C. §§ 1983 and 1981, files this notice of appeal and complaint for

damages resulting from the deprivation of civil rights inflicted upon her by Defendants, and

states as follows:

### NATURE OF COMPLAINT

1. This Complaint asserts a civil rights action for discrimination, hostility, and retaliation

under NMSA 1978 § 28-1-7 *et seq.* (New Mexico Human Rights Act), 42 U.S.C. § 1981, 42

U.S.C. § 1983, and 29 U.S.C. § 2612(a)(1) (Family and Medical Leave Act).

2. Defendant New Mexico Human Services Department (*hereinafter* "NMHSD") by and

through its employees, including Defendant Dustin Acklin in his capacity as the Acting Human

Resources Director have cultivated and condoned an employment environment of discrimination,

EXHIBIT A

harassment, and retaliation directed against Plaintiff Tamira Smiley (*hereinafter* "Smiley") based on her race and color (African American/Black) and in retaliation for prior EEO activity, grievances, complaints, and protected disclosures.

3.  At all times material of this complaint, Defendants were acting under the color of state law along with the course and scope of his/her employment as HSD Supervisor and Acting HR Director.

4.  By reason of Defendants' conduct, Smiley has been damaged in an amount to be determined at trial, and this action seeks actual, compensatory, hedonic, punitive and liquidated damages, interest, and reasonable costs and attorney's fees for the damages suffered by Smiley.

## JURISDICTION AND VENUE

5.  Plaintiff Tamira Smiley is and has been at all times a resident of the City of Rio Rancho, County of Sandoval, State of New Mexico.

6.  Defendant New Mexico Human Services Department (NMHSD) is a State of New Mexico agency created to manage federal and state funds and administer income services to New Mexicans. The Income Support Division provides financial and employment support to New Mexicans under the NMHSD.

7.  Defendant Dustin Acklin in his official capacity is an employee of NMHSD and as such may be sued for his participation in the allegations pursuant to the New Mexico Human Rights Division. NMHSD is a State of New Mexico agency.

8.  On November 19, 2020, Smiley filed charges with the New Mexico Human Rights Bureau (HRB # 20-11-9072-S/EEOC # 39B-2021-00127) alleging continued discrimination and harassment based on race and color, and retaliation based on prior complaints, charges, and reports of misconduct.

EXHIBIT A

9. On July 15, 2021, the New Mexico Department of Workforce Solutions issued Smiley an Order of Non-Determination.

10. This action is timely filed as Smiley exhausted her administrative remedies by filing discrimination, harassment, and retaliation charges with the New Mexico Human Rights Bureau (HRB # 20-11-9072-S on or about November 19, 2020was issued a Dismissal of Formal EEO Complaint dated July 15, 2021. (See Attached).

11. Pursuant to N.M. Const. art. VI, § 13, this Court has jurisdiction over this matter and venue is proper pursuant to NMSA 1978 § 38-3-1(A) because the circumstances and transactions in this action occurred in the County of Bernalillo and State of New Mexico.

## BACKGROUND AND FACTS

12. On January 31, 2004, Smiley began working with NMHSD and remains employed as a Quality Control Specialist (QC) in the Income Support Division.

13. In 2011, Smiley reported that a co-worker, Brett Hendrickson, Quality Control, (Hendrickson) was blasting Rush Limbaugh and Shawn Hannity in the office and during the workday while they were making racist, sexist, and homophobic comments. After the report Hendrickson became hostile and aggressive with Smiley as demonstrated by shoulder knocking her into a hallway wall while walking past Smiley, ignoring her, and generally mocking her presence. This happened on multiple occasions.

14. After making the report, Adam Martinez, Quality Control Supervisor, (A. Martinez) began to micro-manage her work by questioning the status repeatedly, chastising her for calculations which he perceived to be wrong (without confirming the basis), and voiced overly

EXHIBIT A

critical admonitions of her work and denied Smiley usage of state vehicle that had been allowed for the same purposes as other state employees.

15. In about 2012, Smiley filed EEOC charges against Defendant alleging race discrimination (Agency Case No. 543-2013-00009).

16. A. Martinez frequently denied or made it difficult for Smiley to use earned leave.

17. In January 2013, Smiley was wearing splints on her wrists because of carpal tunnel syndrome symptoms. She requested assistance from A. Martinez to complete the additional assignments that required her to physically pick up larger files not required by the other employees holding the same position. In response, Defendant required that Smiley complete an ADA form to receive an accommodation.

18. In May 2013, Hendrickson made allegations to A Martinez that visual contact from Smiley's family while visiting her at work created safety concerns because her black family members were allegedly "staring," and that he feared his and his family's lives because Smiley and her family were driving on the same streets - Alameda, Tramway, and Paseo del Norte – as Hendrickson.

19. On May 13, 2013, Defendant through Eileen Burns, Quality Control Manager (Burns), and A. Martinez issued a Letter of Concern to Smiley based on Hendrickson's allegations.

20. On May 23, 2013, Smiley filed a grievance alleging race discrimination with Defendant Human Resources, and in July 2013, following a grievance hearing the Letter of Concern was rescinded.

21. In August 2013, Denise Martinez, Quality Control, (D. Martinez) told A. Martinez and Burns that she did not feel safe with the black women, (Smiley and Michelle Jones), in the office.

EXHIBIT A

22. In August 2013, Defendant issued a report finding that reported office conduct including slamming doors and cabinets, spraying scents, making allegations of race based fears, was equivalent to issuing unwarranted discipline, isolating Smiley, giving privileged treatment to Hendrickson and D. Martinez, minimizing and micro managing access to office supplies to Smiley, was equivalent to discrimination, and harassment creating a hostile environment.

23. In late 2013, quotes by Martin Luther King, Jr. were placed in the women's restroom and A. Martinez accused Smiley and another black woman of putting the quotes on the wall and stated that they were "torn down" by Mary McIntyre, Supervisor, because they "offended some employees."

24. On October 31, 2013, A. Martinez and Burns issued a "failed/dissatisfactory" performance evaluation to Smiley rating her as a "does not achieve" on her evaluation.

25. On November 1, 2013, Smiley filed another EEO complaint (EEOC No. 543-2013-00009) against NMHSD alleging discrimination and harassment because of her race and retaliation for reports of misconduct.

26. On December 12, 2013, NMHSD changed the failed final evaluation to a 1st Interim for FY14 rating period 10/2012- 10/2013 with a "does not achieve" rating.

27. Thereafter, NMHSD increased the micromanagement and heavily questioned Smiley's work requests, including reservations for and use of the state vehicle.

28. In early 2014, Smiley filed EEOC charges against Defendant alleging race discrimination and retaliation (Agency Case No. 543-2014-00064).

29. NMHSD increased its campaign to harass and retaliate against Smiley by treating her dismissively, ignoring her requests, denying pay for work, and isolation.

EXHIBIT A

30. To avoid the misconduct, on January 6, 2016, Smiley requested to telework to a different office, which was denied by Carolyn Craven, HSD Quality Assessment Bureau, (C. Craven) who stated "No, that is not a possibility. This is the same request I denied earlier. Thank you."

31. On January 20, 2016, Smiley filed EEOC charges (Agency Case No. 543-2016-00307) alleging ongoing race discrimination since 2015, and retaliation for prior charges.

32. On July 1, 2016, Smiley reported a pattern of discrimination and retaliation to C. Craven, giving examples of reductions of work time, refusal to advise of individuals making complaints against Smiley, failure to confirm allegations before issuing discipline, and allegations of misusing and abusing work time. There was no response.

33. Smiley requested a flex schedule on several occasions, and each time the request was denied and unexplained. For example, Smiley requested a flex schedule on September 21, 2016 and Carolyn Craven denied it immediately without an explanation. Smiley requested an explanation and was told to "…contact Mary Brogdon directly to request a reason." Smiley contacted Ms. Brogdon via email and she responded that the request was denied because of the Governor's mandate on scheduling and because of timing. Smiley requested a copy of the referenced Governor's Mandate, but it was not provided.

34. On October 24, 2016, C. Craven denied Smiley's request for telework stating the "position you accepted is located in Albuquerque," and alleged that Smiley was "arriving to work late on occasion and have taken longer than allowed lunch breaks." Smiley denied the allegations but was not provided with any additional information or due process in responding to the claims.

35. On October 26, 2016 C. Craven stated, "relying on reports she receives from the local management."

EXHIBIT A

36. On February 13, 2018, Nathan Hale, Defendant Human Resources, refused to approve FMLA for Smiley for a proven qualifying serious medical condition with initial certification submission issued by a health care provider stating "your physician will need to amend the certification to include what the medical procedure is, so that I can determine if the medical procedure qualifies for FMLA." Hale instructed that Smiley was required to "call in" daily until the request was considered.

37. On or about March 1, 2018, Smiley filed a complaint with the Wage and Labor Department advising that she had provided the documents required by Defendant to determine eligibility but was denied and ignored.

38. In late August 2018, Smiley again requested a flex schedule which was denied on September 4, 2018, by C. Craven who stated that "Mary Brogdon, Director, has reviewed your request and denied it." Smiley requested an explanation for the denial to which Craven responded: "The Director did not give me a reason."

39. Later, on September 7, 2018, Craven stated that she tried to "convince her that QCRs do not have to follow the same 8-5 as the ISD workers…" but no further explanation was provided and the Governor's Mandate was not produced.

40. On January 18, 2019, Smiley submitted a NMSPB SPO Alternative Work Schedule Agreement, requesting a modified schedule to address her family obligations and the distance between her residence and assigned work location, but was advised that Defendant was not allowing flex schedules despite that the New Mexico State Personnel Board General Memorandum 2011-003 dated September 19, 2011, stated that "Alternative Work Schedules (AWS) … referred to as Flex Schedules, are allowed within agencies/departments as established within the State Personnel Board Rules and the collective bargaining agreements."

EXHIBIT A

41. On January 24, 2019, C. Martinez denied the renewed request for flex time because the hours requested were not "allowed per the Human Services Department Policy 046.4.1."

42. On February 7, 2019, C. Martinez ordered Smiley to take lunch at a certain time and questioned Smiley's scheduled home visits (HV), but disparately told co-workers "be sure you are taking your full 1 hr lunch while out on HV's. Flexing time should not be for shortened lunches, it should only be for extended time of traveling after 5pm."

43. On February 22, 2019, Smiley filed a grievance and when there was no response, she filed an information request on February 27, 2019. D. Acklin, Defendant Human Resources and Acting Director, requested an extension but never responded and instead D. Acklin requested a meeting at a time that Smiley was unavailable.

44. On March 21, 2019, Smiley submitted a medical relocation recommendation to Defendant requesting a transfer to a working location in closer proximity to her residence.

45. On March 29, 2019, Lora Olson, Defendant Employee and Labor Relations Specialist, denied the medical relocation, and Smiley filed a continuing grievance, but no response, requested documents, or acknowledgment of the grievance was provided.

46. On April 10, 2019, D. Acklin responded to Smiley's requests for information about the grievances and stated that they were denied and cited non-response due to vacancies in the department. D. Acklin stated that Defendant might transfer Smiley to her previous work location (Sandoval) if she could produce an ADA form reporting medical issues.

47. On April 26, 2019, C. Martinez demanded that Smiley detail the time she was out of town on work, micro-managed Smiley's appointments and breaks during the travel, and then denied Smiley lunch at a time during the scheduled workday.

EXHIBIT A

48. In August 1, 2019, Smiley filed a Public Employee Labor Relations Board Prohibited Practices Complaint (PELRB No. 105-19) alleging unjustified denial of employment benefits and Defendant's continued refusal to approve flex time requested and failure to respond to grievances.

49. On August 21, 2019 Smiley filed a grievance (8/21/19 Grievance) against C. Martinez due to unreasonable denial of Flex/alternate schedule.

50. On August 30, 2019, D. Acklin responded to the 8/21/19 Grievance advising his staff was unable to clarify the miscommunications but that NMHSD would now approve Smiley's requested flex time.

51. In January 2020, C. Martinez denied Smiley a ride to attend a mandatory conference in Santa Fe, New Mexico because she did not "feel comfortable" riding with Smiley. Craven stated "no one likes her (Ms. Smiley)," and Craven and C. Martinez required Smiley take an Uber from her residence in Rio Rancho to a Bernalillo location to meet with other employees traveling from Las Cruces to attend the conference. Defendant denied reimbursement for the Uber.

52. Because of the treatment and conduct by Defendant employees, managers, and directors Smiley has suffered stress, anxiety, and depression which has necessitated medical treatment and leave to attend to the medical issues.

53. Each time Smiley has been approved for FMLA leave, C. Martinez required that she exhaust all leave in advance of unpaid leave. Smiley requested guidance and policies for leave to cover the time she was away from work to ensure no lapse in insurance payments; however, C. Martinez denied the request causing Smiley to be without pay and requiring that Smiley send a money order to cover insurance to avoid lapse.

EXHIBIT A

54. On January 24, 2020, Smiley contacted NMHSD Human Resources Natisha Montoya inquiring about paid and unpaid leave during FMLA; no response was received.

55. Smiley inquired with C. Martinez several times about leave pay and on February 20, 2020, C Martinez told Smiley "there is still leave balances that needed to be used.".

56. On February 26, 2020 Smiley contacted Defendant Human Resources Judith Parks to inquire if all accrued leave had to be used before unpaid FMLA could be used and Parks responded "an eligible employee may choose to request any combination of accrued paid leave and unpaid leave for FMLA purposed."

57. On February 26, 2020, C Martinez told Smiley "We have been misinformed about FMLA employee leave and got clarification yesterday from HR, that FMLA employees can enter time in SHARE any way they choose."

58. In early 2020, C. Martinez denied Smiley union leave pay for her time assisting with union matters, despite authority from D Acklin to have the time reported as union leave.

59. On February 7, 2020, C. Martinez witnessed a client yell at Smiley, via facetime, stating that she was a "nigg**er because she was a nigg**er," but did nothing in response to the racial statement. Instead, C. Martinez resumed the conversation and did nothing about the behavior. That same day, Smiley emailed C. Martinez voicing concern about the racial name calling, and C. Martinez replied "I plan on talking to her again & will address it with her." Nothing further was done.

60. In April 2020, Defendant Martinez instructed Smiley to make contact with the client that had called her a ni**er multiple times. Smiley did as instructed, and was again called a ni**er multiple times followed by text messages using the same slur. Smiley informed new supervisor Michelle Campos and Crystal Martinez. Smiley also filed an Incident Report.

EXHIBIT A

61. In February 2020, Defendant, knowing of Smiley's flex time and transfer requests, involuntarily transferred Smiley to a new work location which was a similar distance and required more time to travel.

62. In June 2020, AFSCME Council 18 filed a PELRB Prohibited Practices Complaint against NMHSD on behalf of Smiley (PELRB Case No. 111-20).

63. NMHSD through its employees speaks down to Smiley, displays micro-aggressive attitudes and behaviors, reprimands her in public, shames her publicly and without justification.

64. NMHSD through its employees has campaigned to defame Smiley through inaccurate and misrepresentative emails and evaluations.

65. NMHSD through its employees has engaged in and condoned conduct intended or likely to feed and create stereotypes suggesting that Smiley is perpetually late to work, is lazy, an angry black woman, threatening, and has accused Smiley of gang affiliations.

66. To address the conduct and abuse of power, Ms. Smiley was forced to file grievances and complaints, as no other manager stepped in to address the conduct.

67. Smiley's experience as an employee of NMHSD has been one of discrimination, hostility and retaliatory response to her continued efforts to address the behavior through the system to no avail.

68. NMHSD through its system, culture, and employees has marginalized and exploited Smiley by denying her the privileges, benefits, and opportunities of her position.

69. NMHSD and Acklin knew about the misconduct of other employees and others and failed to take reasonable and adequate measures to neutralize, correct, and prevent the reported behavior.

EXHIBIT A

70. Defendants have created, condoned, and persisted in a discriminatory, hostile and retaliatory environment which was caused Smiley damages, including humiliation, mental and emotional distress, lost income and benefits, loss of opportunity, actual and compensatory damages, fees and costs.

**COUNT I**
**VIOLATION OF THE NEW MEXICO HUMAN RIGHTS ACT NMSA 1978 § 28-1-7**
**RACE/COLOR DISCRIMINATION (AFRICAN AMERICAN/BLACK)**

71. Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

72. The New Mexico Human Rights Act NMSA 1978 § 28-1-7 (NMHRA) prohibits an employer to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of, *inter alia*, race and color.

73. Smiley belongs to a protected class of African American black women and was qualified for her position which is evidence by prior performance evaluations, continued employment, promotion in June 2008 to Quality Control Specialist, and her background and experience with Human Services as a Family Analyst.

74. Smiley suffered adverse employment actions by Defendants' actions and inactions, including but not limited to reimbursement denials, denial of travel share opportunities, improper leave pay deductions and denial of proper leave allocation, repeated denials of requested flex time, repeated denials of requested transfers without invasive and unreasonable steps, maintained or increased work and responsibility during intermittent leave with reduced hours, improperly docked hours for breaks taken, involuntary transfer to a distant location with greater travel time and in direct contradiction with her requests, and refusal to promptly and adequately address racial name calling and discriminatory conduct.

EXHIBIT A

75. Other employees similarly situated but not of the protected class have been treated differently. For example:

    a. Other employees were permitted to share a ride to the Santa Fe, NM conference.

    b. Other employees have been reimbursed for transportation expenses without micromanagement, repeated denial, and invasive explanation.

    c. Other employees have been transferred to locations in close proximity to their residences or at the location of their choice.

    d. Other employees have been granted modified responsibilities when hurt or otherwise temporarily unable to complete a task without demanded documentation.

    e. Other employees have been allowed more than a 30-minute lunch break and various and different break times and have not been disciplined for any variations.

    f. Other employees are permitted late arrival and leave periods without formally requesting and obtaining flex schedules.

    g. Other employees have been invited to office gatherings and parties but have excluded Smiley.

    h. Smiley was denied proper leave and time computing for work conducted as the union steward, and only after she inquired each time was the time reduction modified.

    i. Smiley was routinely denied requests for a transfer to a prior work location at the Sandoval office but was involuntarily transferred to a location that is equally distant and requires greater time to commute.

EXHIBIT A

j.  Defendant has submitted unwarranted letters of concern, discipline, and poor evaluations, and has refused to receive input from Smiley, and has modified or dismissed each only after requiring that she file grievances and other formal methods of recourse.

k.  Defendant has repeatedly failed to respond to properly filed grievances.

76. The discrimination claims and supporting circumstances giving rise to this complaint are based on characteristics commonly associated with race and color stereo typing.

77. Defendants' conduct is in violation of the NMHRA and has caused Plaintiff actual, compensatory and hedonic damages including income and benefits, excessive wear and tear on vehicle, loss of opportunity, emotional and mental anguish, fees and costs.

78. Defendant is liable to Plaintiff for her proven damages.

**COUNT II**
**VIOLATION OF THE NEW MEXICO HUMAN RIGHTS ACT**
**NMSA 1978 § 28-1-7(I) (RETALIATION/REPRISAL)**

79. Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

80. Section 28-7-1(I) of the NMHRA prohibits an employer from retaliating against an employee for asserting a claim of discrimination in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified.

81. Defendants, through its managers and officials, retaliated against Smiley because of her prior EEO charges, grievances, PELRB complaint, objections, reports, concerns, and other actions.

82. Defendant through its managers, directors and employees retaliated against Smiley by engaging in willful actions and inactions, including but not limited to ignoring complaints of other employee and client misconduct, repeatedly denying modified break times, denying or

EXHIBIT A

incorrectly applying leave, denying flextime and transfers without explanation, limiting access to necessary office resources, refusing to ride share to a mandatory work conference, denying travel reimbursement, and involuntarily transferring to a new office location with greater travel time.

83. The Defendant's willful actions and inactions were in retaliation to complaints, charges, and grievances.

84. Defendant's conduct is in violation of the NMHRA and has caused Plaintiff actual, compensatory and hedonic damages including income and benefits, excessive wear and tear on vehicle, loss of opportunity, emotional and mental anguish, fees and costs.

85. Defendant is liable to Plaintiff for her proven damages.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS RACE DISCRIMINATION**
**42 U.S.C. § 1981 and 42 U.S.C. § 1983**
**(DISCRIMINATION, HARASSEMENT & RETALIATION)**

86. Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

87. 42 U.S.C. § 1981 prohibits discrimination and harassment on the basis of race in the making or enforcement of employment contracts and in the workplace.

88. Retaliation is also prohibited under 42 U.S.C. § 1981.

89. Section 1981(a) states: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

EXHIBIT A

90. "Make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

91. 42 U.S.C. § 1983 prohibits deprivation of any rights, privileges or immunities secured by federal statute and provides for federal damages remedy for the violation of rights guaranteed by section 1981 when the claim is pressed against a state actor.

92. Smiley is a black woman, a protected class, and as a black woman, Smiley belongs to an ethnicity that has traditionally been subject to discrimination.

93. Smiley has been employed by the Defendant for more than sixteen years and has been qualified and performing the position of Quality Control Specialist.

94. Defendant has subjected Smiley to adverse employment action including but not limited to involuntarily humiliation, transferring her to an office in a more distant and more time consuming location, transferring her to an office that she requested not to be placed at, denied paid leave and reimbursement for expenses incurred as part of her position, refusing to include Smiley in work activities,  denying her  transportation to a state-wide mandatory conference, stating that no one likes Smiley and no one want to ride with her, repeatedly denying a flex schedule and transfer requests, refusing to accurately report leave time, and failing to adequately and promptly respond to racial discrimination by clients.

95. The discrimination claims and supporting circumstances giving rise to this complaint are based on characteristics commonly associated with race and color stereotyping.

96. Defendant engaged in unlawful intentional discrimination and evidence demonstrates discriminatory animus and motive, and harassment.

EXHIBIT A

97. Plaintiff has been damaged by the unlawful conduct condoned and furthered by
Defendant which caused Plaintiff damages including lost income and benefits, mental anguish,
fees and costs.

98. Defendant is liable to Plaintiff for compensatory damages including lost income, interest
at the prevailing rate, punitive and liquidated damages, fees, costs, and equitable relief.

### COUNT IV
### VIOLATION OF FAMILY AND MEDICAL LEAVE ACT (FMLA)
### 29 U.S.C.A § 2601 et seq. (2008)

99. Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the
foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

100.      The FMLA states that it "shall be unlawful for any employer to interfere with,
restrain, or deny the exercise of or the attempt to exercise, any right provided under this
subchapter," and that "[i]t shall be unlawful for any employer to discharge or in any other
manner discriminate against any individual for opposing any practice made unlawful by this
subchapter." 29 U.S.C. §§ 2615(a)(1), (2).

101.      Under the FMLA, employers are prohibited from interfering with an employee's
attempt to exercise her rights under the statute and may not terminate or discriminate against an
employee because she has filed a claim under the FMLA.

102.      Smiley sought FMLA covered leave due to serious health conditions including
stress and anxiety, making it difficult to perform the functions of the position, and Defendant and
Smiley agreed to intermittent leave on a reduced leave schedule as it was medically necessary.

103.      Defendant through its directors and managers required that Smiley complete the
full course of work while on intermittent FMLA leave despite that she had reduced hours.

EXHIBIT A

104.     Smiley reported her concerns about the workload and the intermittent leave, but no immediate response was received to her reports. Instead, Defendant through C. Martinez chastised, micromanaged, and humiliated Smiley for her workload and completion.

105.     Smiley again reported her concerns and questions related to the workload and leave requirements, with no response.

106.     Thereafter, Defendant involuntarily transferred Smiley to the Coors location which is further and takes longer to commute to.

107.     Defendant has discriminated against, interfered with and denied Smiley's attempt rights under the FMLA.

108.     Defendant caused Smiley humiliation and damages including lost wages, mental anguish, fees and costs.

109.     Defendant is liable to Smiley for damages including lost wages, interest at the prevailing rate, liquidated damages, fees, costs, and equitable relief.

**COUNT V**
**VIOLATION OF FOURTEENTH AMENDMENT**
**DISCRIMINATION BASED ON RACE/COLOR**

110.     Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

111.     Smiley has and had a Fourteenth Amendment right to prevent persons in governmental position of power from discriminating and harassing based on race and color.

112.     Defendants collectively discriminated against and harassed Smiley based on her race and color in violation of her right to liberty interests and are jointly and severally liable for

EXHIBIT A

intentional discrimination pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

113.    Defendants conduct under color of law grossly deprived Smiley of her fundamental liberty interests.

114.    Defendants ignored substantive Due Process and Equal Protection requirements.

115.    But for Defendants' Martinez and Acklin positions of authority they would not have been able to subject Ms. Smiley to the deprivations.

116.    Defendants actions shock the conscience and were active, intentional, and willful.

117.    Defendants actions proximately caused damages to Smiley as alleged.

118.    As a result of Defendants' conduct and the nature of such conduct, Ms. Smiley is entitled to recover punitive damages jointly and severally.

**COUNT VI**
**VIOLATION OF FIRST AMENDMENT**
**RETALIATION**

119.    Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

120.    Defendant Martinez and Acklin retaliated against Smiley for confronting them and reporting them for misconduct.

121.    Defendant Martinez and Acklin retaliated against Smiley by denying benefits of employment, failing to timely and adequately address racist conduct, refusing to properly abide by the Collective Bargaining Agreement to Smiley's detriment, ignoring grievances.

122.    Defendants' retaliation was unlawful and would chill an ordinary person in the exercise of first amendment rights and Smiley suffered damages as a result of this conduct.

EXHIBIT A

123.     Defendants acted willfully, knowingly, and purposefully and/or with deliberate indifference to deprive Smiley of her Constitutional rights.

124.     As a result of the nature of Defendant's conduct, Smiley is entitled to recover punitive damages and other remedies as afforded by law and equity and to be proven at trial.

## CONCLUSION

WHEREFORE, Plaintiff Tamira Smiley respectfully requests that this Court:

a.  declare the conduct engaged in by Defendants a violation of Plaintiff's rights and protections under NMSA 1978 § 28-1-7 et seq. (New Mexico Human Rights Act), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 29 U.S.C. § 2612(a)(1) (Family and Medical Leave Act);

b.  order damages including lost income, lost leave, lost reimbursement, emotional distress damages, and any lost front and back pay and benefits for the period;

c.  award Plaintiff equitable relief of back salary and fringe benefits up to date of trial and prejudgment interest for that entire period;

d.  award Plaintiff compensatory, liquidated, penalty based, interest, and punitive damages;

e.  award Plaintiff reasonable costs and attorney fees; and

f.  grant such other relief as it may deem just and proper.

EXHIBIT A

Respectfully Submitted by:

ROYBAL-MACK & CORDOVA, P.C.

*/s/ Amelia P. Nelson*
AMELIA P. NELSON
ANTONIA ROYBAL-MACK
DARREN LEE CORDOVA
*Attorneys for Plaintiff*
4901 Chappell Road NE, Suite B
Albuquerque, NM 87107
Phone: (505) 288-3500
Fax:    (505) 288-3501
amelia@roybalmacklaw.com

EXHIBIT A