IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

TAMIRA SMILEY,

    Plaintiff,

v.                                                  Case No. 1:22-cv-00088 JHR/JFR

NEW MEXICO HUMAN SERVICES
DEPARTMENT, DUSTIN ACKLIN, in his
official capacity with the NMHSD,
CRYSTAL MARTINEZ, in her official
capacity with the NMHSD,

    Defendant.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ALL COUNTS OF THE COMPLAINT

Plaintiff Tamira Smiley, by and through her attorneys of record Roybal-Mack & Cordova, P.C. (Amelia P. Nelson), pursuant to the Fed. R. Civ. Pro. 12 and applicable laws, and responds in opposition to the *Defendants' Motion to Dismiss All Counts of the Complaint* (Doc. 5), and in doing so states as follows:

## INTRODUCTION

Defendants have engaged in continuous action discrimination, harassment, and retaliatory treatment in a systematic and contrived effort to harm Plaintiff Tamira Smiley, an African American woman. The complaint states that she has been subjected to a system, culture, and environment that has marginalized and exploited her by denying privileges, benefits, and opportunities of her employment with the Defendant New Mexico Human Services Department (HSD) and by, in part, Dustin Acklin and Crystal Martinez, in violation of the New Mexico Human Rights Act (NMHRA), 42 USC §§ 1981 and 1983, Fourteenth and First Amendments of the US Constitution, and the Family Medical Leave Act (FMLA).

1

## MOTION TO DISMISS STANDARD OF REVIEW

FRCP 8(a)(2), requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," but does not require detailed factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-678, 129 S.Ct. 1937, 1273 L.Ed. 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2008)). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft*, at 678. Facial plausibility exists when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Two working principles underlie a motion to dismiss: <u>First</u>, the court must accept as true all of the allegations contained in a complaint but threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Twombly*, at 555 (for purposes of a motion to dismiss the court must take all factual allegations in the complaint as true, but is not bound to accept as true legal conclusions couched as factual allegations) (internal quotation marks omitted)); and <u>second</u>, a complaint that states a plausible claim for relief survives dismissal. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the court to draw on its judicial experience and common sense. *Id.*

## ARGUMENT

Plaintiff has alleged facially plausible facts, accepted as true, that demonstrate Defendants engaged in unlawful conduct entitling her to relief under each count.

**I.   SUFFICIENT PLAUSIBLE FACTS DEMONSTRATE CONTINUOUS UNLAWFUL ACTION AND ADVERSE EMPLOYMENT ACTION BY DEFENDANTS IN VIOLATION OF THE NMHRA**

In the Complaint (Doc 1, Ex. A, attached as Exhibit 1), Plaintiff alleges two NMHRA allegations: Count I – race/color discrimination and Count II – retaliation/reprisal violations. She alleges that Defendants discriminated, harassed, and retaliated against her in a continuous action manner between 2013 and 2020.

A.  *Plaintiff Exhausted Her Administrative Remedies Under the NMHRA*

Ms. Smiley exhausted her administrative remedies for all claims of race/color discrimination, harassment, and retaliation brought under the continuing violation theory of the NMHRA. She does not dispute the requirement to timely file charges of discrete act discrimination, harassment and/or retaliation within 300 days of the alleged act under the NMHRA. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 17. Indeed, to bring a NMHRA suit in district court, a plaintiff must exhaust the administrative process with respect to all defendants named in the district-court lawsuit. *See* NMSA 1978, § 28–1–13(A); *Luboyeski v. Hill,* 117 N.M. 380, 383, 872 P.2d 353, 356 (1994). On November 6, 2020, Plaintiff filed administrative charges alleging continuing action (i.e. violation) race, color, and disability discrimination, harassment, and retaliation occurring between 2013 and 2020 (Ex. 1 ¶10). Three hundred days before the formal filing was January 11, 2020.

First, the continuing violation claims are properly brought against all defendants. The Supreme Court of New Mexico allows for personal liability under the NMHRA. *See Sonntag v. Shaw,* 2001-NMSC-015, 22 P.3d 1188, 130 N.M. 238; *See also Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1089 (D.N.M. 2011) (citing *Duprey v. Twelfth Judicial Dist. Court,* No. CIV 08–0756 JB, 2009 WL 2482170, at *7 (D.N.M. July 28, 2009) (Browning, J.)). In *Sonntag*, the Court stated:

> …[T]his Court has acknowledged the possibility of individual liability for discrimination claims. *Cf. Luboyeski v. Hill,* 117 N.M. 380, 382, 872 P.2d 353, 355 (1994) (affirming

3

> dismissal of individual defendants because plaintiff failed to exhaust administrative remedies against them); *Mitchell–Carr v. McLendon,* 1999–NMSC–025, ¶ 10, 127 N.M. 282, 980 P.2d 65 (citing *Luboyeski* ). … the potential for individual liability for discrimination claims is rooted in the language of the NMHRA itself, which forbids "any person" from supporting a discriminatory practice. Section 28–1–7(I); *see* NMSA 1978, § 28–1–2(A) (1993) (including within its definition of "person" for purposes of the NMHRA, "one or more individuals").

2001-NMSC-015, ¶ 12. Here, Plaintiff named Defendants HSD, C. Martinez, and Acklin in the administrative charges and thus exhausted her administrative remedies against the individually named defendants.

B. ***The Complaint Alleges a Pattern of Unlawful Conduct in Violation of the NMHRA Providing Jurisdiction for Violations Occurring Before and After January 11, 2020.***

Plaintiff alleges discrimination, harassment, and retaliation as part of a continuing action (violation) theory. The complaint states that Defendants engaged in continued unlawful conduct, which culminated in adverse acts and damages: in January 2020 C. Martinez denied transportation to Plaintiff because she was "not liked" and then denied reimbursement for the costs of Plaintiff's own transportation (Ex. 1, ¶51); in early 2020, Defendant denied payment for time assisting with union matters which was approved and routinely paid to other union stewards (Id. ¶58); on February 27, 2020, C. Martinez witnessed racial slurs made by a client to Plaintiff, but failed to adequately and timely responded and was then forced Plaintiff to continue work with and suffer the barrage of racial slurs (Id. ¶¶59-60); in February 2020, after years of requesting a transfer to a more accessible and less caustic location, Defendants involuntary transferred Plaintiff to a HSD office that interfered with approved flex time, was in direct contrast to transfer requests, and which was known to require more travel time and costs (Id. ¶61). Before January 2020, allegations include: employee comments they did not feel safe with "the black women in the office" (Id. at ¶18, 19, 21); Defendant disciplined Plaintiff based on allegations of fears, isolated her from her peers, gave privileged treatment to other (non-African

American) employees (¶¶19, 42, 51, 58, 63, 65, 69, 75); prevented her from accessing office supplies (¶22); removed Martin Luther King, Jr. quotes because they "offended some employees," and accused Plaintiff of placing the quotes on the wall (¶23); issued unwarranted unsatisfactory performance appraisals (¶24);  subjected her to racist, sexist, and homophobic comments. (¶13); ignored reports of misconduct (¶¶43, 46, 50, 54, 66, 69); refused to advise which individuals were making complaints (¶¶29, 32); and denied repeated requests for flex time and/or transfer to another less caustic location (¶¶30, 33-34, 38-41, 44-47, 61).

The continuing action theory applies to discriminatory, harassing, and retaliatory conduct where the conduct is repeated showing an actionable pattern of unlawful conduct. *See Charles v. Regents of NM State Univ.*, 2011-NMCA-057, ¶ 12, 256 P.3d 29. In the context of a retaliation or hostile work environment claim, "[i]t does not matter ... that some of the component acts of the hostile work environment fall outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Charles*, 2011-NMSC-057, ¶ 11. So long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court." *Id.; Macias v. Sw. Cheese Co., LLC,* 624 F. App'x 628, 634 (10th Cir. 2015). The caveat is that "there must be a relationship between the acts alleged after the beginning of the filing period and the acts alleged before the filing period." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver,* 397 F.3d 1300, 1308 (10th Cir.2005). Pre- and post-filing-period conduct constitutes the same hostile environment if it "'involved the same type of employment actions, occurred relatively frequently, and [was] perpetrated by the same managers.'" *Id.* at 1309 (brackets omitted) (quoting *Morgan,* 536 U.S. at 120, 122 S.Ct. 2061).

Here, the claims fall "within the scope of the administrative investigation that could reasonably be expected to follow from the allegations raised in the charge." *Green v. Donahoe,* 760 F.3d 1135, 1140 (10th Cir.2014), *cert. granted,* ––– U.S. ––––, 135 S.Ct. 1892, 191 L.Ed.2d 762 (2015). Allegations are "minimally sufficient to satisfy the requirements for the contents of a charge of discrimination and the purposes of the notice requirement" when they "identif[y] the type of discrimination complained of, the alleged harasser, and an approximate time period." *Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253, 1260 (10th Cir.1998). Plaintiff marked the boxes for race, retaliation, and disability, and alleged continuing-action race discrimination and retaliation spanning from 2011 the date of filing (and thereafter). She alleged hostile work environment in the body of the charges. The conduct complained of relates back to the initial acts and continues through the date of the administrative charges.

Plaintiff exhausted her administrative requirements against all Defendants for all conduct before and after January 2020. The relationship between the acts and prior conduct demonstrates exhaustion and therefore should be considered as part of the claims and satisfaction of the requirements. Sufficient material and plausible facts are alleged in the complaint demonstrating the conduct post January 11, 2020, relates back to the continuous conduct before that date.

C.  *The Complaint Allegations When Accepted as True Sufficiently Demonstrate Adverse Employment Action*

The facts alleged in the Complaint are plausible, and when accepted as true, demonstrate adverse employment action. *See Morgan,* 536 U.S. 101 at 117 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice"). The complaint alleges that Defendants engaged in continued unlawful conduct, which culminated in the following adverse acts: January

2020 denied reimbursement for the costs of work related transportation (Ex. 1, ¶51); denied payment for time assisting with union matters (¶58); on February 27, 2020, failed to respond to witnessed racial slurs and then forced Plaintiff to continue work with and suffer the barrage of racial slurs (¶¶59-60); in February 2020 involuntary transferred Plaintiff to an office that interfered with approved flex time, , and which required more travel time and costs (¶61); discipline based on allegations of fears from her peers and privileged treatment to other (non-African American) employees (¶¶19, 42, 51, 58, 63, 65, 69, 75); denial of accessing office supplies (¶22); removal of black history quotes because they "offended some employees," (¶23); unwarranted unsatisfactory performance appraisals (¶24);  racist, sexist, and homophobic comments (¶13, 59-60); ignored reports (¶¶43, 46, 50, 54, 66, 69); hiding which individuals were making complaints (¶¶29, 32); and denied repeated requests for flex time and/or transfer to another less caustic location (¶¶30, 33-34, 38-41, 44-47, 61). The well plead facts demonstrate adverse employment action.

    The existence of an adverse employment action is determined on a case-to-case basis. *Heno v. Sprint/United Mgmt. Co.,* 208 F.3d 847, 857 (10th Cir.2000) (internal quotations omitted). To constitute an adverse action, the employer's conduct must be "materially adverse" to the employee's job status. *Medina v. Income Support Div., New Mexico,* 413 F.3d 1131, 1136 (10th Cir. 2005); *Sanchez v. Denver Pub. Schs.,* 164 F.3d 527, 533 (10th Cir.1998); s*ee Pinkerton v. Colorado Dep't. of Transp.*, 563 F.3d 1052, 1059 (10th Cir. 2009) ("First, the employer is vicariously liable when 'the supervisor's harassment culminates in a tangible employment act, such as discharge, demotion, or undesirable reassignment.")(citation omitted). Conduct that effects "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

7

significant change in benefits" will be deemed an adverse employment action. *Hillig v. Rumsfeld,* 381 F.3d 1028, 1032–33 (10th Cir.2004) (internal quotations omitted). Coworker hostility or retaliatory harassment constitutes an adverse employment action if it is sufficiently severe. *Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253, 1264 (10th Cir.1998).

Here, the well pleaded facts demonstrate sufficiently, when taken as true, that Plaintiff suffered adverse employment action by Defendants.

C. *The Complaint Includes Sufficient Plausible Facts to Demonstrate Discriminatory, Harassing, and Retaliatory Conduct in Violation of the NMHRA*

Sufficient evidence is alleged that continuous incidents, including discrete acts occurring in the three-hundred-day period, were motivated by racial animus. Plaintiff presents plausible facts that demonstrate she faced an unlawful racially charged work environment and she endured continuous unlawful actions motivated by her race in the years prior to filing the complaint.

1. *NMHRA Discrimination*

The NMHRA forbids employment discrimination on the basis of race or color. NMSA 1978 § 28-1-7(A), (I) (2020); *Chavez v. New Mexico*, 397 F.3d 826, 831–32 (10th Cir. 2005). The Act is violated when the workplace is permeated with discriminatory intimidation, ridicule or insult to alter the conditions of the victim's employment and create an abusive working environment. *See Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326-27 (10th Cir. 2004)). Under the Act, "it is an unlawful discriminatory practice ... to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of ..." race. *Sonntag*, 2001-NMSC-015, ¶ 11. A plaintiff must show direct or indirect evidence that the organization and named members intentionally discriminated against her on the basis of her race and/or color. *See id.* The critical prima facie inquiry in all cases is whether the plaintiff has

8

demonstrated that the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." *Id.* at 253, 101 S.Ct. 1089; *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 311–12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (citation and quotations omitted).

The Complaint alleges sufficient well pleaded facts demonstrating the adverse employment action occurred under circumstances inferring unlawful racial discrimination (see surpra).

### 2. *NMHRA Hostile Work Environment*

To establish a racially hostile work environment, Ms. Smiley must "show (1) that she was discriminated against because of her race; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." The Complaint states in pertinent part: on February 7, 2020, C. Martinez failed to respond to a HSD client yelling that Plaintiff was a "ni**er because she was a ni**er,", did not respond despite watching the event, and then forced Plaintiff to continue to work with the client (Ex. 1, ¶¶59-60); Plaintiff reported the conduct to Defendant Martinez and another supervisor and filed an Incident Report but nothing more was done (¶60); Defendant Martinez would not allow Plaintiff to ride with her because she did not "feel comfortable" and "no one likes you" and denied Plaintiff reimbursement for her transportation (¶51); denied payment for approved and requested work time (¶58); employees stated they did not feel safe with "the black women in the office" and treated her severely because of her race (¶¶13, 18, 19, 21, 23); issued improper discipline and performance appraisals (¶¶19, 24, 42, 51, 58, 63, 65, 69, 75); ignored reports of unlawful conduct (¶¶43, 46, 50, 54, 66, 69); and denied repeated requests for flex time and/or transfer to another less caustic location (¶¶30, 33-34, 38-41, 44-47, 61).

9

Analogous to this matter, the Tenth Circuit reversed a grant of summary judgment for the defendant on a plaintiff's hostile work environment claim. *Herrera,* 474 F.3d at 691. The court stated that whether a workplace is permeated with discriminatory insults that are sufficiently severe or pervasive to create a hostile work environment "is particularly unsuited for summary judgment because it is quintessentially a question of fact." *Id.* at 680 (quoting *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 923 (10th Cir. 2001)). In reversing the summary judgment granted to the defendant, the court recognized that Herrera presented evidence of five or six discrete incidents of racial harassment by his supervisor, plus evidence of other harassment, that occurred over four years. *Id.* at 680-81. Similarly, in *Smith v. Nw. Fin. Acceptance, Inc.*, the court found that proof of six sexually inappropriate statements made by a supervisor over a 23-month period was sufficient to support a finding of pervasive harassment. 129 F.3d at 1415. Distinguishable from the instant matter, in *Chavez,* 397 F.3d at 832, and *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998), the court held that two racially offensive comments over a two-year period fell far short of the "steady barrage" required for a hostile environment claim. Similarly, in *Bolden v. PRC Inc.*, 43 F.3d 545 (10th Cir. 1995), the court affirmed the summary judgment granted to the defendant when the plaintiff experienced two overtly racial remarks and one arguably racial comment in eight years. *Id.* at 551-52.

### 3. *NMHRA Retaliation*

Plaintiff has pled sufficient factual basis to demonstrate retaliatory conduct by Defendants. A plaintiff establishes a prima facie case of retaliation by showing: (1) he or she engaged in protected opposition to discrimination; (2) he or she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1234 (10th Cir. 2000).

The first element of a retaliation claim requires plaintiff show she engaged in a statutorily protected activity. *See Proctor v. United Parcel Serv.,* 502 F.3d 1200, 1208 (10th Cir. 2007). Filing an EEOC complaint is protected activity. *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1178 (10th Cir. 1999). ("By filing an EEOC claim, Plaintiff engaged in protected activity."). The second element requires adverse employment action.

The complaint includes well-pled facts of protected activities: in 2011, she reported racist, sexist, and homophobic comments (¶13); after the 2011 report, her supervisor became hostile and pejorative (¶14); in 2012 she filed EEOC charges against Defendant alleging race discrimination (¶15); in 2013, she filed a grievance alleging race discrimination in the issuance of discipline and three months later, a Defendant employee stated she did not feel safe with black women (¶¶20-21); on 2013, she filed EEOC charges alleging race discrimination and retaliation and six weeks later she received a "does not achieve" performance racing (¶¶25-26); in 2014, she filed EEOC charges alleging race discrimination and retaliation (¶28); in 2016, she filed EEOC charges alleging continued action race discrimination and retaliation (¶31); on July 1, 2016, she reported a pattern of discrimination and retaliation to leadership, with no response (¶32); on March 1, 2018, she filed a Wage and Labor complaint (¶37); on February 7, 2019, she filed a grievance regarding the ongoing conduct and denial of legitimate requests (¶43); in March 2019, she filed a grievance based on a continued denial of relocation, which was ignored (¶45); on August 1, 2019, she filed a Prohibited Practices Act complaint regarding unjustified denial of employee benefits (¶48); on August 21, 2019, she filed a grievance against C. Martinez alleging unreasonable denial of flex/alternate schedule (¶49); and in June 2020, AFSCME filed a Prohibited Practices Complaint obo Ms. Smiley (¶62)

Courts have addressed the determination of an adverse employment action for purposes of retaliation. *See Pinkerton v. Colorado Dep't. of Transp.*, 563 F.3d 1052, 1059 (10th Cir. 2009); *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 70 (N.M. 2004). Adverse employment action is determined on a case-to-case basis and does not include "a mere inconvenience or an alteration of job responsibilities." *Heno v. Sprint/United Mgmt. Co.,* 208 F.3d 847, 857 (10th Cir.2000) (internal quotations omitted). To constitute an adverse action, the employer's conduct must be "materially adverse" to the employee's job status. *Medina v. Income Support Div., New Mexico,* 413 F.3d 1131, 1136 (10th Cir. 2005); *Sanchez v. Denver Pub. Schs.,* 164 F.3d 527, 533 (10th Cir.1998). Conduct effecting "a significant change in employment status, such as … reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" is an adverse employment action. *Hillig v. Rumsfeld,* 381 F.3d 1028, 1032–33 (10th Cir.2004) (internal quotations omitted). Also, coworker hostility or retaliatory harassment constitutes an adverse employment action if it is sufficiently severe. *Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253, 1264 (10th Cir.1998). The well-pled facts of the complaint demonstrate adverse employment action (see *supra*).

Plaintiff has pled sufficient factual basis to demonstrate retaliatory conduct by Defendants.

II. **THE COMPLAINT ALLEGES PLAUSIBLE FACTS SUPPORTING §§ 1981 / 1983, FIRST AMENDMENT, AND FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE CLAIMS AGAINST THE INDIVIDUALLY NAMED DEFENDANTS**

Plaintiff does not dispute that Defendant HSD is immune from suit under the referenced counts. Nonetheless, Plaintiff's complaint sufficiently presents well-pleaded, plausible facts demonstrating her entitlement to relief under sections 1983 and 1981, the Fourteenth Amendment and the First Amendment for violations of due process and equal protection, and

12

deprivation of rights as *against the individually named defendants*. The current law and its progeny are clear that liability under the referenced sections and amendments are actionable against persons.

### A. **The 42 USC §§ 1981, 1983 and Fourteenth Amendment Claims Are Actionable Against the Individually Named Defendants**

Section 1981 protects the equal right of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts" without respect to race. 42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b); *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75, 126 S. Ct. 1246, 1249, 163 L. Ed. 2d 1069 (2006); see also *Ramirez v. Dep't of Corr,*. 222 F.3d 1238, 1244 (10th Cir. 2000) (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) ("[O]n its face [§ 1981] relates primarily to racial discrimination in the making and enforcement of contracts," and it provides a remedy for employment discrimination on the basis of race).

"No person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. These principles are applied to the states through the Fourteenth Amendment. *Moongate Water Co. v. State,* 1995-NMCA-084, ¶ 16, 120 N.M. 399, 404, 902 P.2d 554, 559. The Equal Protection Clause of the Fourteenth Amendment mandates that no state "deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Race discrimination can violate the Fourteenth Amendment right to equal protection of the law and create a cause of action under 42 U.S.C. § 1983. *Poolaw v. City of Anadarko, Okla.,* 660 F.2d 459, 462 (10th Cir.1981).

Section 1983 creates the remedy against persons who, acting under color of law, violate rights secured by federal statutory or constitutional law. *See Ramirez v. Dep't of Corr., Colo.,* 222 F.3d 1238, 1243 (10th Cir. 2000); *Reynolds v. School Dist. No. 1, Denver, Colo.,* 69 F.3d 1523, 1536 (10th Cir.1995). Section 1983 states, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Case law is clear that the term "person," as used in section 1983, includes the individually named defendants in this complaint. *See Monell v. Dept. of Soc. Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978) (holding municipalities and school boards are instrumentalities of state administration); *Daddow v. Carlsbad Mun. Sch. Bd.*, 1995-NMSC-032, ¶ 6 (holding all local governing bodies are included within the meaning of persons); *cf. Martinez v. Board of Education,* 748 F.2d 1393, 1396 (10th Cir.1984) (holding that school districts in New Mexico *are* arms of the state and consequently entitled to Eleventh Amendment immunity).

Here, the individually named defendants are persons. In the complaint, Plaintiff alleges Defendants violated her Fourteenth Amendment equal protection rights by discriminating against her based on race. Specifically, the complaint states factual allegations demonstrating that Defendants denied her equal protection by treating her disparately as compared to non-African American employees (*See* Ex. 1, ¶¶ 13-14, 16-24, 26-27, 29-30, 32-34, 36, 38 – 43, 45 47, 50-51, 75(a-k), 92-98, 111-188). Thus, looking to the four corners of the complaint, accepting all well-pleaded facts as true, it is clearly shown that Plaintiff is plausibly entitled to relief from the individually named defendants and the motion to dismiss on these counts should be denied.

B. **Discrimination**

To present a prima facie case of discrimination under section 1981, which guarantees equal contract rights regardless of race an employee is required to prove that: (1) she was member of protected class; (2) she suffered adverse employment action; (3) at time employer took adverse employment action, employee was performing at level that met employer's legitimate expectations; and (4) she was treated differently from other similarly situated persons who were not members of the protected class. Discriminatory intent necessary to support a section 1981 claim may be demonstrated through disparate impact, departures from procedural norms, history of discriminatory actions, and other relevant facts. *Flagg v. Control Data*, E.D.Pa.1992, 806 F.Supp. 1218. Plaintiff has stated well-pled facts supporting the section 1981 claims for race discrimination. (*See supra,* Section C(1), p. 8).

C. **Harassment**

For harassment, the test is a disjunctive, requiring a plaintiff to prove that the harassing conduct was either severe or pervasive enough to create a hostile work environment. *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1413 (10th Cir. 1997).; *See also Houston v. Casa Chevrolet, Inc.,* No. CV 08-1168 WPL/DJS, 2010 WL 11618889, at *4 (D.N.M. Dec. 15, 2010). To avoid a motion to dismiss on a racially hostile work environment claim, a plaintiff must present sufficient facts that (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." *Bolden v. PRC Inc.,* 43 F.3d 545, 551 (10th Cir.1994) (citation omitted). A plaintiff cannot meet this burden by demonstrating "a few isolated incidents of racial enmity" or "sporadic racial slurs." *Id.,* quoting *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1412–13 (10th Cir.1987). Instead, "there must be a steady barrage of opprobrious racial comments." *Id.*

D.     **Retaliation**

A plaintiff can prove illegal retaliation under section 1981 if she shows that (1) she engaged in protected activity, (2) she suffered adverse employment action at the hands of employer, and (3) employer took adverse action because of protected activity. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 128 S.Ct. 1951, 170 L.ed.2d 864 (2008). Moreover, "remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 461, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Circumstantial evidence of violative § 1981 retaliation may include "(1) suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Carter v. Chicago State Univ.*, 778 F.3d 651, 657–58 (7th Cir. 2015) (citations omitted).

In the Complaint at issue, Plaintiff provides significant and sufficient factual allegation that Defendants engaged in retaliatory conduct. For example, on February 22, 2019, Plaintiff filed a grievance regarding ongoing disparate conduct and denial of legitimate requests (¶43) and six weeks later, Defendant denied her request for a medical relocation allowing her to work close to her home (¶44). In March 2019, she filed a grievance based on a continued denial of relocation, which was ignored (¶45), and on April 10, 2019, Defendant Acklin responded for the first time to the 2/22/19 grievance stating there were no vacancies, but only if she produced an ADA form would it be considered (¶46). on August 1, 2019, she filed a Prohibited Practices Act complaint

regarding unjustified denial of employee benefits (¶48). On August 21, 2019, Plaintiff filed a grievance against Defendant Martinez alleging unreasonable denial of flex/alternate schedule (¶49) and only after the grievance on August 30, 2019, Defendant Acklin responded and approved her flex time (¶50). Three months later, Defendant Martinez, supervisor, refused to give Plaintiff a ride to a work conference, stated she was not comfortable with Plaintiff and that "no one" liked her, and the denied reimbursement for travel costs to the conference (¶51). In January 2020, Defendant Martinez initially refused to discuss Plaintiff's FMLA approve leave an leave balances, refused to seek clarification, and later denied Plaintiff work time payment. (¶¶55-58). In February 2020, Defendant Martinez refused to address racial slurs directed at Plaintiff and forced Plaintiff to further endure the conduct (¶59-60). Accepting Plaintiff's well pleaded facts and allegations as true there is more than sufficient allegation that Defendants retaliation and the motion should be denied.

### III.   PLAINTIFF'S FMLA CLAIMS ARE ACTIONABLE, WELL PLEADED AND BASED ON ADVERSE ACTION SUFFERED THROUGH INTERFERENCE AND RETALIATION ENTITLING PLAINTIFF TO DAMAGES

Plaintiff's well pleaded allegations are sufficient to demonstrate FMLA violations and adverse action resulting in recoverable damages. To establish an interference or retaliation FMLA claim, plaintiff must show some adverse action by the employer either interfered with the employee's right to FMLA leave, or that after engaging in activity protected under the act, the employee suffered adverse action by the employer. *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). The concern posed by Defendants turns on whether Plaintiff has pled adverse action.

A retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment

action based on incidents post-dating her return to work. *See id* (citing*, Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117, 1136–38 (10th Cir.2003). The Tenth Circuit liberally defines the phrase "adverse employment action." *Gonzales v. Albuquerque Pub. Sch.*, No. CV 11-0300 MV/WDS, 2013 WL 12329076, at *10 (D.N.M. Sept. 26, 2013) (quoting *Sanchez v. Den. Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (citations omitted)). They are not limited to monetary losses in the form of wages or benefits, *see id.* (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir. 1996)), and the court takes "a case-by-case approach," examining the unique factors relevant to the situation at hand, and has confirmed to constitute an adverse employment action, the plaintiff must show "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quotations omitted).

    Here, when accepting the well pleaded facts as true, plaintiff claims a significant change in her employment and benefits: Defendant approved Plaintiff for intermittent leave on a reduced leave schedule (¶102); despite the approved reduced time at work, Defendant Martinez mandated that Plaintiff maintain the same level of work output (¶103); she reported her concerns, but received hostile conduct in response from Defendant Martinez (¶ 104); she was required to consume accrued leave before taking unpaid FMLA (¶¶54-57); she was involuntary transferred to a location with a greater commute time and at a location she specifically requested not to be transferred (¶61). The mandated usage of the accrued leave resulted in her inability to take leave at significant times in her life: the illness and subsequent passing of her mother, holidays, and for family care instances, and forced Ms. Smiley lost hours of accrued leave (equitable relief) and lost pay (monetary relief) caused by Defendant's conduct. While defendants challenge the weight of the adversity, the plain language of the complaint sufficiently pleads such action. The

complaint states sufficient well pled facts when viewing them as true to survive dismissal at this stage.

## **CONCLUSION**

Plaintiff has been subjected discrimination, hostility and retaliatory response to her continued efforts to address the behavior through the system to no avail. Defendants knew and took part in the unlawful conduct and failed to take reasonable and adequate measures to neutralize, correct, and prevent the behavior. Defendants have created, condoned, and persisted in a discriminatory, hostile and retaliatory environment which was caused Smiley damages, including humiliation, mental and emotional distress, lost income and benefits, loss of opportunity, actual and compensatory damages, fees and costs.

WHEREFORE, Plaintiff Tamira Smiley respectfully requests that this Court deny Defendants' motion to dismiss in its entirety, or in the alternative allow Plaintiff a right to amend her complaint for good cause to clarify the claims and to provide additional instances of factual violations, and for such other and further relief as just in law and equity.

*Respectfully Submitted by:*

ROYBAL-MACK & CORDOVA, P.C.

/s/ Amelia P. Nelson,
AMELIA P. NELSON
*Attorneys for Plaintiff*
P.O. Box 91658
Albuquerque, NM 87109
Phone: (505) 288-3500
Fax:    (505) 288-3501
Amelia@roybalmacklaw.com

## **CERTIFICATE OF SERVICE**

   I hereby certify that on the 10th day of March 2022, the foregoing was electronically filed through the United States District Court CM/ECF System causing all parties and counsel of records to be served by electronic means as more fully reflected on the notice of filing.

*/s/ Amelia P. Nelson*
AMELIA P. NELSON