IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TAMIRA SMILEY,

    Plaintiff,

v.                                                                Civ. No. 22-088 JHR/JFR

NEW MEXICO HUMAN SERVICES DEPARTMENT, DUSTIN ACKLIN, in his official capacity with the NMHSD, CRYSTAL MARTINEZ, in her official capacity with the NMHSD,

    Defendants.

## **MOTION TO DISMISS ALL COUNTS OF THE COMPLAINT**

Defendants New Mexico Human Services Department ("HSD"), Dustin Acklin ("Acklin"), and Crystal Martinez ("Martinez") by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves the Court for an order dismissing all of Plaintiff Tamira Smiley's claims due to her failure to state a claim upon which relief may be granted. Defendant sought, but was unable to receive, Plaintiff's position to this Motion to Dismiss prior to the time of its filing. Due to the nature of this Motion it is presumed that Plaintiff opposes the relief requested.

### **INTRODUCTION**

Plaintiff is an employee of HSD. In her Notice of Appeal and Complaint for Damages ("Complaint"), Plaintiff alleges that she has suffered discrimination, hostile treatment, and retaliation in the workplace in violation of both state and federal law, and that HSD interfered with and retaliated against her for asserting her rights under the Family Medical Leave Act ("FMLA"). Plaintiff has not resigned or been terminated from her position. Plaintiff has not alleged that she

# Exhibit 1

has been demoted or passed over for promotion. Plaintiff has not alleged any monetary damages, including specifically lost back pay or front pay, in the Complaint. Plaintiff has alleged that she was improperly required to take annual leave instead of unpaid FMLA leave, but she has not alleged (1) the existence of a paid family leave program at HSD that would have allowed her to conserve her paid leave, or (2) that she was not fully compensated for the annual and sick leave she took.

Plaintiff's claims fail for a number of reasons. First, Plaintiff's state law claim under the New Mexico Human Rights Act ("NMHRA") (Counts I and II) fails because Plaintiff has not alleged actions amounting to any adverse employment action constituting a tangible, significant, harmful change in the conditions of her employment that is not time barred. Next, Plaintiff's 42 U.S.C. § 1981 and 42 U.S.C. § 1983 claims (Counts III, V, and VI) fail because HSD, and Acklin and Martinez acting in their official capacities, are not subject to suit under either of those statutes. Finally, Plaintiff's FMLA claim (Count IV) fails because she has suffered no loss of income or other monetary loss as a result of the alleged violation(s). For these reasons, HSD, Acklin, and Martinez request that the Court enter an order dismissing all of Plaintiff's claims.

## STANDARD OF REVIEW

In deciding a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the court accepts as true all well-pleaded facts, but not legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and citation omitted). The court must "determine

whether the complaint sufficiently alleges facts . . . necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in original).

In reviewing the complaint, the court "should disregard all conclusory statements of law in the complaint and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest that the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). To this end, Fed. R. Civ. P. 12(b)(6) serves two purposes: "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Id.* at 1215 (internal quotation marks and citation omitted). The complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her[.]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).

The Tenth Circuit permits a defendant to "raise an affirmative defense of failure to exhaust." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018). The district court can dismiss "a claim on the pleadings based on an affirmative defense" "only when the complaint

3

itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

## ARGUMENT

### I. Plaintiff's NMHRA Claims (Count I and II) Fail as a Matter of Law

The NMHRA claims fail for two reasons: (1) claims related to conduct prior to January 2020 are time barred, and (2) Plaintiff has not sufficiently alleged an adverse employment action with respect to the remaining allegations.

### A. Claims concerning discrete acts prior to January 2020 are time barred

The NMHRA prohibits both discrimination and retaliation in the workplace based on race or color. NMSA 1978, § 28-1-7(A), (I) (2020). "[F]ull compliance with NMHRA grievance procedures is a prerequisite to filing an NMHRA claim in district court." *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 17, 127 N.M. 282 (brackets omitted) (quoting *Sabella v. Manor Care, Inc.*, 1996–NMSC–014, ¶ 9, 121 N.M. 596; *accord Luboyeski v. Hill*, 1994-NMSC-032, ¶ 7, 117 N.M. 380; 872 P.2d at 355; *Jaramillo v. J.C. Penny Co.*, 1985-NMCA-002, ¶ 2, 102 N.M. 272. One of these grievance procedures is that "[a]ll complaints shall be filed with the division within three hundred days after the alleged act was committed. *See,* NMSA 1978, § 28-1-10(A) (2005).

To apply this statutory requirement, the Court must consider whether the alleged claims "can be construed as discrete unlawful employment practices . . . or as a cumulative series of acts constituting a single unlawful employment practice." *Ulibarri v. State of N.M. Corrections Academy*, 2006-NMSC-009, ¶ 11, 131 P.3d 43 (adopting test stated in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107-08, (2002)). "'[D]iscrete acts" of discrimination must proceed

4

through the administrative process within the three-hundred-day limit.  *See id.*, ¶ 3 (quoting *Morgan*, 536 U.S. at 114).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 436 U.S. at 113.  Conversely, "hostile environment cases involve repeated conduct over days or years" and are actionable if any "one act contributing to a hostile environment claim occurred within the filing period."  *Ulibarri*, 2006-NMSC-009, ¶ 4.  The continuing violation theory may also apply to retaliation claims that involve repeated instances of conduct that, taken in isolation, are not individually actionable; in that case, the entire pattern of retaliation may be actionable if a contributing act occurred during the statutory period.  *See Charles v. Regents of N.M. State Univ.*, 2011-NMCA-057, ¶ 12, 256 P.3d 29.

Discrete acts involve individual "incidence[s] of discrimination" or "retaliatory adverse employment decisions[s]" such as "termination, failure to promote, or refusal to hire."  *Morgan*, 436 U.S. at 114.  The distinction between "discrete acts" and permissible claims for continuing violation in *Morgan* and *Ulibarri* turns on whether the conduct at issue would be separately actionable as an adverse employment action.  If so, the discrete act must be separately exhausted by filing a timely administrative claim.  *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

An adverse employment action occurs when an employer imposes a tangible, significant, harmful change in the conditions of employment.  *Ulibarri*, 2006-NMSC-009, ¶ 16.  *Accord Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant

5

change in benefits."). For instance, in the context of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). This standard is objective:

> We refer to reactions of a reasonable employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.

*Id.* at 68-69. Along this line, the Tenth Circuit "defined an 'adverse employment action' as not limited to those situations where a plaintiff can show loss of an actual job, but also as encompassing those acts that carry a 'significant risk of humiliation, damage to reputation, and a concomitant harm to *future employment prospects.*'" *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032 (10th Cir. 2004) (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)) (emphasis original).

In contrast, hostile work environment claims comprise a series of separate acts that constitute, only when taken together, one unlawful employment practice. *See Morgan,* 536 U.S. at 116-17; *accord Ulibarri*, 2006-NMSC-009, ¶ 10 ("Unlike discrete acts, hostile environment cases involve repeated conduct over days or years and individual acts of harassment may not be separately actionable"). These claims redress non-traditional forms of discrimination that, taken together, alter the conditions of employment. *Meritor Sav. Bank F.S.B. v. Vinson*, 744 U.S. 57, 64-67 (1986). A hostile environment is created when the conduct has the purpose or effect of unreasonably interfering with an individual's work performance or "creating an intimidating, hostile, or offensive work environment." *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 24, 91

6

P.3d 58.  To determine whether conduct is abusive or hostile, the Court should consider the totality of the circumstances, including the following factors: the frequency of the discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating; whether the conduct interferences with the employee's work performance.  *Id.* at ¶ 18.  To determine whether conduct is sufficiently related to constitute a continuing hostile work environment, Courts consider whether the incidents involve "the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers."  *See Morgan*, 536 U.S. at 121 (quotation marks omitted); *see also Noland v. City of Albuquerque*, 779 F. Supp. 2d 1214, 1227 (D.N.M. 2011)

Applying these principles, "[i]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 13, 103 P.3d 571.  For instance, under analogous federal law, the Tenth Circuit has held that "[t]he mere utterance of a statement which 'engenders offensive feelings in an employee' would not affect the conditions of employment to a sufficient[ly] significant degree to violate Title VII.'"  *Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (alteration in the original) (quoting *Meritor Sav. Bank, FSB*, 477 U.S. at 67).  Rather, a plaintiff must allege more than "'a few isolated incidents of racial enmity' or 'sporadic racial slurs.'"  *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir.2005) (quoting *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir.1994) (internal citation omitted)).  "Instead, 'there must be a steady barrage of opprobrious racial comments.'"  *Id.* at 832 (quoting *Bolden*, 43 F.3d at 551).

Retaliation claims may similarly involve multiple instances of discriminatory conduct that are actionable as a single adverse employment action.  Determining whether a retaliation claim

7

may proceed under a continuing violation theory, therefore, requires the Court to consider whether the alleged acts of discrimination would be individually actionable. If so, they must be separately and timely exhausted. *Compare Charles*, 2011-NMCA-057, ¶¶ 5-6, 12-13 (affirming use of continuing violation theory for retaliation against teacher comprising "harassment, threatening behavior discrimination, and reprisals," including repeated instances of unfair criticism, "angry, rude, and demeaning" conduct, and yelling in front of colleagues and students), *with Wells v. Hi Country Auto Grp.*, No. 12-CV-828 WJ/KBM, 2013 WL 12170280, *3 (D.N.M., May 15, 2013) (reasoning that retaliation taking the form of interference with unemployment benefits could not proceed under continuing violation theory). *Cf. Martinez,* 347 F.3d at 1210 (continuing violation doctrine as previously applied to retaliation claims has been replaced with the requirement that each discrete incident of retaliatory treatment must be exhausted).

Here, Plaintiff's claims are time barred because her complaint alleges a series of unconnected, discrete acts of ostensible discrimination occurring, almost exclusively, more than three hundred days before she filed her complaint with the New Mexico Human Rights Bureau. Plaintiff alleges that she filed her complaint with the Human Rights Bureau on November 19, 2020. Complaint ¶ 8. Three hundred days prior to November 19, 2020, is January 24, 2020. Therefore, all discrete acts of discrimination in the Complaint prior to January 24, 2020, are outside the statutory limitations period and are not actionable. The allegations in paragraphs 12 through 50 all predate January 24, 2020 and cannot be considered in evaluating whether Plaintiff has stated a claim for Counts I and II. Discrete acts of discrimination therein include: (1) denial of the request for telework (*see id.*, ¶¶ 30, 34); (2) denial of a "flex" schedule (*see id.*, ¶ 33, 38, 41); (3) denial of leave (*see id.* ¶ 36); and (4) denial of relocation requests (*see id.*, ¶¶ 45). Plaintiff claims that

8

similarly situated white employees were granted these benefits. *See id.*, ¶ 75. All of these allegations, to the extent that they give rise to colorable claims, should be dismissed as time barred.

Plaintiff is likely to retort that her allegations concerning conduct before January 2020 may proceed because she has alleged a continuing violation theory of retaliation. This argument fails as a matter of law. Taking the allegations in the Complaint as true, Defendants' discriminatory denial of Plaintiff's employment benefits, including telework, work site transfers, and paid and unpaid leave, constitutes a series of discrete acts of alleged discrimination to which the exhaustion requirement applies. The remaining claims, such as poor performance reviews (e.g., Compl. ¶ 26) or increased micromanagement (e.g., *id.* at ¶ 47) do not themselves state a plausible claim for retaliation because they do not amount to an adverse employment action. They do not rise to the sort of constant barrage of public humiliation and harassment found actionable in *Charles* or *Hillig*. Further, as indicated in Plaintiff's repeated grievances and discrimination complaints, they would not dissuade a reasonable employee from making or supporting a claim of discrimination.

Finally, although Plaintiff has not explicitly pled a claim for hostile work environment, it appears likely that she will respond by claiming that the allegations predating January 2020 remain actionable under a hostile work environment theory. This argument fails as a matter of law because Plaintiff has not pled sufficient facts to give rise to a plausible claim for hostile work environment. The factual allegations that specifically concern potential racial animus, spanning more than a decade, are limited to a few instances: (1) in 2011, a co-worker (B. Hendrickson), apparently without any supervisory or managerial role, listened to racially insensitive conservative political media in the office (*see id.*, ¶ 13); (2) in 2013, the same co-worker apparently made allegations that Plaintiff's family were a safety concern (*see id.*, ¶ 18); (3) also in 2013, a manager (D.

Martinez) remarked that she did not feel safe with Plaintiff in the office because she was black (*see id.*, ¶ 21); (4) also in 2013, another manager (M. McIntyre) removed quotes from Martin Luther King, Jr., from the walls of the women's restroom (*see id.*, ¶ 23); and (5) in 2020, another manager (C. Martinez) did not react appropriately when a client called Plaintiff a racial slur (*see id.*, ¶¶ 59-60).[1] These allegations do not give rise to a plausible claim for hostile work environment. Applying the factors from *Morgan*, they are too infrequent (i.e., five instances over more than a decade), involve different managers or co-workers (i.e., five instances involving four different people), and involve wholly different types of conduct. Rather than comprising a single pattern of discrimination, these cases are, at most, isolated incidences, as in *Chavez*, that do not change the terms or conditions of employment. They certainly do not rise to a "steady barrage" of racial animus. *Cf. Chavez*, 397 F.3d at 832.

The Court should dismiss with prejudice Plaintiffs' claims in Counts I-II to the full extent that they concern conduct prior to January 2020.

### B. The allegations post-dating January 2020 do not state a plausible claim for race discrimination or retaliation.

Proof that Plaintiff suffered an adverse employment action is critical to both Count I (alleging disparate treatment) and Count II (alleging retaliation) of Plaintiff's Complaint. *See* NMSA 1978, § 28-1-7(A); *Quiroz v. ConocoPhillips Co.*, 310 F. Supp. 3d 1271, 1307, 1317 (D.N.M. 2018) (recognizing that claims under the NMHRA proceed under the *McDonnell Douglas* burden shifting framework and reciting the elements of a prima facie case); *Ulibarri*, 2006-NMSC-009, ¶ 16 ("To prove a prima facie case of retaliation, Plaintiff must show that: '(1) she engaged

---

[1] Plaintiff also makes several unspecific, conclusory allegations concerning racial animus that should be disregarded for the purposes of this Motion. *See id.*, ¶¶ 63-70.

10

in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between these two events.'").

Here, Plaintiff's allegations concerning conduct after January 2020 do not state a plausible claim because she does not allege facts that, taken as true, indicate an adverse employment action. In paragraphs 51 through 70 Plaintiff alleges she was told that people don't feel comfortable riding with her and that no one likes her. Complaint ¶ 51. She also claims that she was required to take paid leave for her Family Medical Leave ("FML") prior to taking unpaid leave. Complaint ¶¶ 53-57. Plaintiff alleges that, one occasion, she was denied union leave pay. Complaint ¶ 58. She then claims that a client, notably not a coworker or any of the Defendants, referred to her using a racial slur on two occasions. Complaint ¶¶ 59-60. Finally, Plaintiff alleges she was transferred to a new work location that was a similar distance from her home as her then-current work location. Complaint ¶ 61. The remaining allegations are nothing more than generalized, conclusory statements of a discriminatory, hostile work environment. Plaintiff provides no other factually specific acts of the Defendants that would constitute an adverse employment action. The same is true of the allegations in Counts I and II. Complaint ¶¶ 71-85. These allegations do not constitute a significant, harmful change in the conditions of employment and do not indicate that any of the decision-makers acted with racial animus or intent. Without any showing that these comments were coupled with any more concrete action, they do not rise to the level of an adverse employment action.

Because Plaintiff has not alleged facts sufficient to demonstrate that her allegations rise to the level of an adverse employment action, Counts I and II of the Complaint fail as a matter of law.

## II. Plaintiff's § 1981 and § 1983 Claims (Counts III, V, and VI) Fail as a Matter of Law

Plaintiff alleges violations of her civil rights under § 1981 and § 1983. These allegations are brought against HSD and Acklin and Martinez in their official capacities. HSD is a state agency not subject to suit under either section. Neither are Acklin and Martinez, who Plaintiff alleges were state officials acting in their official capacities subject to suit under either section.

Section 1981 prohibits discrimination based on race in, among other things, the making and enforcement of contracts. It is not clear that Plaintiff has pled facts sufficient (with respect to her employment contract) to indicate a violation of § 1981. Even if she has, Plaintiff's § 1981 claim is simply not cognizable against HSD or Acklin and Martinez acting in their official capacities. The Tenth Circuit (as well as most other circuit courts addressing the issue) has held that § 1981 does not provide a private cause of action against state actors, and that claims for damages arising under § 1981 must be brought under § 1983. *See Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1137 (10th Cir. 2006) (applying *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989)). The only circuit court that has held that municipalities and state actors (in their individual capacities) are independently subject to suit under § 1981 has excluded claims against states themselves from this holding given that permitting private actions against states themselves would "expand the remedies available under § 1981 beyond those already available under § 1983." *Pittman v. Oregon, Employment Dept.*, 509 F.3d 1065, 1070-71 (9th Cir. 2007). As such, under the facts of this case, there is no § 1981 claim available to Plaintiff against HSD, Acklin or Martinez.

The same is true with respect to § 1983. Section 1983 prohibits the deprivation of rights secured by the United States Constitution under the color of state law. It is well-established that HSD is not a "person" subject to claims brought under § 1983. Neither are Acklin and Martinez, who Plaintiff asserts were acting in their official capacities at all time relevant to this lawsuit. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). As such, under the facts of this case, there is no § 1983 claim available to Plaintiff against HSD, Acklin or Martinez.

As stated in *Pittman*, "the practical effect of the [United States Supreme Court's] holding in *Will* is that actions against arms of the state under both § 1983 and § 1981 cannot be brought in either federal or state court, because the cause of action in § 1983 does not reach arms of the state." *Pittman,* 509 F.3d at 1072. Because Defendants are all considered arms of the state, Count III of the Complaint fails as a matter of law. The same analysis applies to Counts V and VI. In Count V, Plaintiff claims a violation of her rights under the 14th Amendment. She specifically cites to § 1983. Complaint ¶ 112. Count VI alleges a violation of Plaintiff's rights under the 1st Amendment. To enforce her rights under the 1st and 14th Amendments, Plaintiff must do so through a § 1983 action. For the reasons laid out above, Plaintiff has failed to state a claim for either a § 1981 or a § 1983 action.

Moreover, in order to prove a claim of retaliation for the exercise of her 1st Amendment rights, Plaintiff must prove the following: (1) she was engaged in constitutionally protected activity; (2) that Defendants' actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Defendants' adverse action was substantially motivated as a response to Plaintiff's exercise of constitutionally protected

13

conduct. *Nielander v. Bd. of Cnty Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009); *Smith v. Plati*, 258 F.3d 1167, 1176-77 (10th Cir. 2001). Assuming *arguendo* and for the purposes of this motion only, that Plaintiff could prevail on the first element listed above, her claim fails as to the second and third elements.

Plaintiff's own actions during and subsequent to Defendants' alleged retaliatory conduct undercuts Plaintiff's claim that she was chilled from continuing to confront Acklin and Martinez and reporting them for misconduct. Plaintiff makes allegations of discrimination by Defendants beginning in 2011 and continuing through February 2021. Complaint ¶¶ 13-61. During this time period, Plaintiff filed charges with the Human Rights Bureau on November 19, 2020. *Id.* ¶ 8. She reported the conduct of a coworker in 2011. *Id.* ¶ 13. She filed charges with the EEOC in 2012. *Id.* ¶ 15. She next filed a grievance alleging race discrimination on May 23, 2013. *Id.* ¶ 20. Plaintiff filed another complaint with the EEOC on November 1, 2013. *Id.* ¶ 25. Again in 2014, she filed charges for a third time with the EEOC. *Id.* ¶ 28. In 2016 Plaintiff filed her fourth complaint with the EEOC. *Id.* ¶31. She then filed a complaint with a supervisor about discrimination on July 1, 2016. *Id.* ¶ 32. On March 1, 2018 Plaintiff filed a complaint with the Wage and Labor Department. *Id.* ¶ 37. She filed another grievance on February 22, 2019. *Id.* ¶ 43. And another grievance was filed by Plaintiff on March 29, 2019. *Id.* ¶ 45. Plaintiff filed a PELRB ("Public Employees Labor Relations Board") complaint on August 1, 2019 followed by another grievance on August 21, 2019. *Id.* ¶¶ 48-49. Finally, in June 202, Plaintiff filed yet again with the PELRB. *Id.* ¶ 62. Although the test for this second element is an objective one ("person of ordinary firmness"), Plaintiff's persistence in filing complaints with the HRB, EEOC, PELRB, and internal grievances does provide some evidence that Defendants' actions did not prevent Plaintiff's continued

protestations. *See Plati*, 258 F.3d at 1177 (stating that the plaintiff's "persistence" in his conduct "offers some evidence that [the defendant's] actions did not prevent such private speech").

Regarding the third element, causation, Plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which [s]he refers . . . would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)). Moreover, the pleading must be factual and not merely conclusory. Simply alleging that she has been retaliated against is not sufficient. Plaintiff is required to allege specific facts showing that the claimed retaliation occurred because of her exercise of her 1st Amendment rights. *Frazier v. Dubois,* 922 F.2d 560, 562 n.1 (10th Cir. 1990). Here, Plaintiff's pleading on the causation element is conclusory, rather than factual. *See* Complaint ¶¶ 120-123. She has not adequately alleged that Defendants' supposed retaliatory motives were the "but for" cause of their alleged retaliatory actions. On the contrary, Plaintiff never alleges any retaliatory motive apart from the aforementioned conclusory paragraphs in her Complaint. Plaintiff has failed to state a claim for a violation of her 1st Amendment rights.

### III. Plaintiff's FMLA Claim (Count IV) Fails as a Matter of Law

The FMLA is a comprehensive statutory scheme that prohibits an employer from interfering with an employee's right to medical leave as provided by the statute, and from retaliating or discriminating against and employee for exercising his or her rights. 29 U.S.C. § 2615(a). However, "because recovery under the FMLA is unambiguously limited to actual monetary losses . . . a plaintiff ha[s] no claim under the FMLA where the record show[s] that she suffered no diminution of income and incurred no costs as a result of an alleged FMLA violation." *Walker v. UPS*, 240 F.3d 1268, 1278 (10th Cir. 2003) (applying *Cianci v. Pettibone Corp.*, 152 F.3d 723, 728-29 (7th Cir. 1998)). *See Lapham v. Vanguard Cellular Systems, Inc.*, 102 F.Supp.2d

266, 269 (M.D. Pa. 2000) (holding that even though the plaintiff stated facts sufficient to indicate FMLA interference, she suffered no wage or other monetary loss and "cannot obtain relief under the FMLA and her claim must be dismissed").

Aside from conclusory statements within her claims for relief, Plaintiff pleads no facts indicating that she has suffered any monetary loss as a result of the alleged FMLA violations. Plaintiff has not been separated from her employment, which would implicate both back and front pay. Plaintiff has not alleged the loss of any compensation due to a demotion or the lack of a promotion. Defendant has not alleged facts indicating the express loss of any employment benefits.

The only allegation that could plausibly be viewed as a monetary loss arising from the alleged FMLA violation(s) is Plaintiff's claim that her supervisor improperly required her to take her paid leave before taking unpaid FMLA leave. Complaint ¶¶ 53-57. Assuming, as we must, that this allegation is true, Plaintiff was not financially harmed by her supervisor's conduct. She alleges that she had to "send a money order to cover insurance to avoid lapse." Complaint ¶ 53. However, this would have occurred regardless of the order in which Plaintiff took leave. Implicit in her allegations in paragraph 53 is her assertion that she had insufficient paid leave to cover all the FML time that she requested. Whether her supervisor required Plaintiff to use paid leave before using unpaid leave or vice versa, some portion of the time off requested was going to be unpaid leave, thereby necessitating Plaintiff covering her insurance costs.

Plaintiff alleges that she sought to take unpaid FMLA leave and instead was required to take paid annual leave. *Id.* Plaintiff did not allege that she was later denied FMLA leave after exhausting her annual leave. *See generally id.* ¶¶ 12-70, 99-109. Plaintiff did not allege that HSD had a paid family leave program that would have entitled her to paid time off for FMLA leave

16

taken. *See generally id.* It is unclear how Plaintiff's supervisor's conduct, even if it could constitute a violation of FMLA, resulted in a monetary loss to Plaintiff.

The United States District Court for the District of Columbia recently addressed this very issue in *Lovely-Coley v. District of Columbia*, 255 F.Supp.3d 1 (D.D.C. 2017). In that case, the plaintiff alleged that her employer interfered with her right to take FMLA leave, which caused her to use over 100 hours of sick/annual leave. *Id.* at 10-12. Plaintiff alleged that the value of these hours (as calculated by her hourly wage) constituted a monetary loss under the FMLA. *Id.* at 10. The defendant employer argued that because no other pool of paid time off or paid family medical leave program was in place, the plaintiff would have used the same sick and annual leave as family leave under the existing policy at the time. *Id.* at 11-12. The defendant further argued that the plaintiff did not suffer a loss in benefits or compensation because she received monetary compensation for her leave, whereas, had she taken FMLA leave, her leave would have been unpaid. *Id.* at 12. The court agreed with the defendant, concluding that the plaintiff did not suffer monetary loss where she received full compensation for all of the annual and sick leave used. *Id.* The court additionally concluded that, even if the plaintiff suffered an abstract loss of benefits (in that she lost the right to choose when to take her annual leave) the loss was not compensable through monetary or equitable relief because such relief would result in a windfall to the plaintiff. *Id.* The court therefore granted summary judgment on the plaintiff's FMLA claims. *See id.* at 13 ("Because the plaintiff is unable to make a showing that the District's alleged conduct prejudiced her in a way that is compensable by either monetary or equitable relief as required by the FMLA, the Court . . . enters summary judgment in favor of the District . . . .").

Plaintiff has not pleaded facts indicating that the alleged FMLA violation resulted in a monetary loss. Plaintiff therefore is not entitled to relief under the FMLA, and Count IV of the Complaint fails as a matter of law.

## CONCLUSION

For the foregoing reasons, HSD, Acklin, and Martinez respectfully request that the Court enter an order dismissing all claims and granting Defendants any additional relief the Court believes to be necessary and just.

Respectfully submitted,

MONTGOMERY & ANDREWS, P.A.

By: /s/ *Michael R. Heitz*
    Michael R. Heitz
    Kaleb W. Brooks
P. O. Box 2307
Santa Fe, NM 87504
Telephone: (505) 982-3873
mheitz@montand.com
kwbrooks@montand.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2022, the foregoing was electronically filed and served on all counsel of record via the Court's electronic filing system, as more fully reflected on the Notice of Electronic Filing.

AMELIA P. NELSON
ROYBAL-MACK & CORDOVA, P C.
1121 4th St. NW, Ste. 1D
Albuquerque, NM 87102
Amelia@roybalmacklaw.com
*Attorneys for Plaintiff*

    */s/ Michael R. Heitz*
    Michael R. Heitz