**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

TAMIRA SMILEY,

        Plaintiff,

v.                                              No. 1:22-CV-00088-RB-JFR

NEW MEXICO HUMAN SERVICES
DEPARTMENT, DUSTIN ACKLIN, in his
official capacity with the NMHSD,
CRYSTAL MARTINEZ, in her official
capacity with the NMHSD,

        Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS ALL COUNTS OF THE COMPLAINT**

    Defendants New Mexico Human Services Department ("HSD"), Dustin Acklin, and

Crystal Martinez (collectively, "Defendants"), through counsel of record, reply in support of their

Motion to Dismiss All Counts of the Complaint, filed February 16, 2022 (Dkt. 5) ("Motion").

**ARGUMENT**

    This reply is divided into three parts: (1) the state law claims under the New Mexico Human

Rights Act ("NMHRA") must be dismissed; (2) the 42 U.S.C §§ 1981, 1983 claims must be

dismissed; and (3) the Family Medical Leave Act ("FMLA") claim must be dismissed.

**I.    THE NMHRA CLAIMS FAIL BECAUSE THE POST-2020 ALLEGATIONS DO
NOT AMOUNT TO AN ADVERSE EMPLOYMENT ACTION**

    Counts I-II of the Complaint concern purported violations of the NMHRA.  Count I

concerns discrimination. Dkt. 1-1, Compl., ¶¶ 71-78.  Count II concerns retaliation. *Id.*, ¶¶ 79-85.

    In the Motion, Defendants sought dismissal of Counts I-II because Plaintiff did not allege

an actionable adverse employment action.  This argument proceeded in two interrelated steps:

1

First, the Court should not consider unexhausted discrete acts of discrimination prior to January 2020.  Second, the allegations concerning conduct after January 2020 do not state a claim.  *See* Dkt. 5, Mot., pp. 4-11.  Plaintiff makes several retorts, none of which are persuasive.

### A.  Plaintiff's response focuses on arguments not at issue in the Motion.

Much of Plaintiff's response to the Motion focuses on arguments that are not raised in the Motion.  These include the following: (i) whether Plaintiff's administrative filing was facially sufficient to put Defendants on notice and (ii) whether continuing violation claims are available against the individual Defendants.  These issues have no bearing on the argument in the Motion.

### B.  Discrete acts of discrimination occurring before January 2020 are time barred.

Plaintiff does not respond in substance to one of the principal arguments in the Motion: any discrete acts of discrimination occurring prior to January 2020 are time barred for failure to exhaust administrative remedies under NMSA 1978, § 28-1-13 (2005).  Rather, Plaintiff argues that her claim may proceed under a "continuing action" theory.  Dkt. 11, Resp., 4-6.

Plaintiff's argument misunderstands relevant New Mexico authority concerning the continuing violation theory.  New Mexico has recognized that continuing violation claims may proceed for hostile work environment and retaliation claims under certain circumstances.  *See Ulibarri v. State of N.M. Corrections Academy*, 2006-NMSC-009, ¶ 11, 139 N.M. 193 (hostile work environment); *Charles v. Regents of N.M. State Univ.*, 2011-NMCA-057, ¶ 13, 150 N.M. 17 (retaliation).  These claims concern a "cumulative series of acts constituting a single unlawful employment practice."  *See Ulibarri*, 2006-NMSC-009, ¶ 11.  In contrast, disparate treatment and other discrimination claims premised on discrete acts must be separately and timely exhausted.  *See id.*, ¶¶ 9-11 (adopting test articulated in *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101,

115 (2002)).  In this respect, New Mexico law accords with Federal authority construing analogous provisions of Title VII.  *See Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003) ("[W]hen a plaintiff pursues several disparate treatment claims based on discrete discriminatory acts, the limitations period will begin to run for each individual act from the date on which the underling act occurs.").

Plaintiff makes no response to Defendants' argument that her claims related to discrete acts of discrimination prior to January 2020 should be dismissed.  To the extent that the continuing violation theory may proceed—which Defendants dispute, *infra*—it does not apply to claims for disparate treatment.  Accordingly, Count I must be dismissed to the extent that it concerns discrete acts of discrimination occurring before January 2020.[1]  Likewise, Count II must be dismissed to the extent that the acts of retaliation claimed therein constitute discrete acts of discrimination rather than a single unlawful employment practice culminating in conduct after January 2020.

### C.  Plaintiff has not properly pled a claim under the continuing violation theory.

As noted, Plaintiff's response is that that the conduct prior to January 2020 remains actionable under a continuing violation theory.  This argument fails for two alternative reasons: (1) discrete acts of discrimination may not be used to make out a continuing violation; and (2) the conduct before and after January 2020 is insufficiently related to form a single, continuing violation.

---

[1] As noted in the Motion, the Complaint does not clearly allege a separate claim for hostile work environment, but even if it does, the Court should dismiss the disparate treatment claims (i.e., Count I) concerning pre-2020 conduct.  Plaintiff may proceed on her claims related to that conduct, if at all, under the rubric of a hostile work environment claim.  She makes no argument to the contrary.

**1. The Court should disregard unexhausted discrete acts of discrimination.**

In her response, Plaintiff presumes without analysis that discrete acts of purported discrimination occurring before 2020 (e.g., denial of flex time benefits offered to her white colleagues, Dkt. 1-1, Compl., ¶¶ 33, 38, 40, 75(e)-(f)) may be considered as conduct contributing to a continuing violation. *See* Dkt. 11, Resp., 5. This presumption is incorrect.

As discussed in the Motion, the continuing violation theory in New Mexico is premised on a binary: either the conduct at issue constitutes a "discrete act" of actionable discrimination or not. The New Mexico Supreme Court in *Ulibarri* described the test as follows:

> We therefore consider whether Plaintiff's claims *can be construed as discrete unlawful employment practices*, which *must fall entirely within the statutory period*, or as a cumulative series of acts constituting a single unlawful employment practice, which may all be considered if any one act contributing to the plaintiff's claim falls within the statutory period.

2006-NMSC-009, ¶ 11 (emphasis added). The court's use of mandatory language indicates that if a claim "can be" construed as a discrete act, then it "must" be separately exhausted. A corollary would be that failure to timely exhaust a discrete act bars recovery. *Cf. Morgan*, 536 U.S. at 113 ("Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

Federal authority construing *Morgan* with respect to this issue is mixed. As this Court previously recognized, "*Morgan* does not directly address whether discrete acts of discrimination falling outside the 300-day window may be considered in conjunction with a hostile work environment claim." *E.E.O.C. v. Jackson Nat. Life Ins. Co.*, No. 16-cv-02472-PAB-SKC, 2018 WL 4360442, *6 (D.N.M. Sept. 13, 2018) (citing cases). Several courts have determined that a plaintiff may not revive untimely discrete acts by arguing that they contribute to a continuing violation. *See, e.g., O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) ("Morgan

established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim."). Other courts disagree. *See, e.g., Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011); *accord E.E.O.C.*, 2018 WL 4360442, *6. Diligent research reveals no case in which the Tenth Circuit has considered the issue. But, the Tenth Circuit's general treatment of *Morgan* accords with the approach in *O'Connor*. For instance, in *Duncan v. City & Cnty. of Denver*, the court remarked: "Title VII is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur. Unlitigated bygones are bygones." 397 F.3d 1300, 1308 (3d Cir. 2005); *see also, e.g., Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 633 (10th Cir. 2012) ("[Plaintiff] can employ the continuing violation theory *only* if her denial of training was not a discrete act." (Emphasis added)); *Martinez v. Potter,* 347 F.3d 1208, 1209 (10th Cir. 2003) ("We agree with the government that such unexhausted claims involving discrete employment actions are no longer viable.").

Here, the Court should rule that *Ulibarri* establishes, for claims under the NMHRA, a bright line distinction between discrete acts, which are individually actionable and subject to separate exhaustion requirements, and other acts that may cumulatively comprise a claim for harassment (or retaliation). That rule accords with the better approach under analogous federal law, as expressed in *O'Connor* and other persuasive authorities. It gives weight and effect to the Tenth Circuit's admonition in *Duncan*, *Daniels*, and other cases, that a claimant may no longer use the continuing violation theory to revive untimely and unexhausted claims. Such an exception to the timely exhaustion requirement would swallow the rule.

Applying the bright line rule, the Court should dismiss Plaintiff's continuing violation

5

claims, whether they be premised on a retaliation or hostile work environment theory, to the full extent that they rely on discrete acts of discrimination occurring prior to January 2020.  That is, the Court should rule that Plaintiff may not rely on discrete acts of discrimination (e.g., denial of specific employment benefits, such as leave, flexible schedules, relocation requests) occurring before 2020 to make out her claims in this action.  In evaluating whether Plaintiff has made out claims for hostile work environment or retaliation, it should exclude from its analysis these allegations.

> **2.  Even if the Court considers all of the alleged conduct, the pre-2020 conduct is insufficiently related to the post-2020 conduct.**

Alternatively, if the Court decides that pre-2020 discrete acts may be considered in connection with a continuing violation claim, Plaintiff's pleadings are insufficient to state a claim for a single continuing violation.

The New Mexico appellate courts have not articulated a standard to determine whether conduct is sufficiently related to comprise a continuing violation.  *Cf. Ulibarri*, 2006-NMSC-009, ¶ 11 ("[I]t is not clear that this should be considered an act contributing to a hostile work environment, rather than a discrete discriminatory act.").  Accordingly, it is appropriate to look to the federal standards.  *See Lobato v. N.M. Env. Dept.*, 733 F.3d 1283, 1296-97 (D.N.M. 2013).

Applying *Morgan* and Title VII, the Tenth Circuit has established the following process to determine whether pre- and post-limitation period conduct may be considered together: "We begin by examining the acts in the filing period and determining what acts outs outside of the filing period are related by type, frequency, and perpetrator.  *See Duncan*, 397 F.3d at 1309; *see also Hansen v. Skywest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016).

Here, the pre- and post-January 2020 conduct are insufficiently related.  First, the types of

alleged discrimination are largely unrelated.  After January 2020, the conduct alleged is statements that Plaintiff is not liked; denial of travel reimbursement; denial of union pay; racial slurs uttered by *a client*; and a location transfer.  *See* Dkt. 11, Resp., 4 (citing Dkt. 1-1, Compl., ¶¶ 51, 58, 59-60).  Before 2020, much of the conduct is unrelated, including  co-worker comments about feeling "unsafe"; interference with office supplies; removal of wall décor with quotes from Dr. Martin Luther King; poor performance reviews; and delay in responding to complaints. *See id.*, 4-5 (citing Dkt. 1-1, Compl., ¶¶ 13, 18, 19, 21, 22, 23, 24, 29, 32, 42, 46, 50, 51, 54, 58, 63, 65, 66, 69, 75).

Second, to the extent that the conduct is related, it is insufficiently frequent.  For instance, the allegations concerning racially insensitive comments span almost a decade, with distinct episodes in 2013 (e.g., Dkt. 1-1. Compl. ¶ 21) and 2020 (e.g., *id.*, 51) each involving different individuals.  A handful of instances over nearly a decade cannot make out a claim for a continuing violation.  Indeed, the cases that Plaintiff cites in support of her frequency argument cut in the opposite direction.  *See* Dkt. 11, Resp., 10 (citing cases).  For instance, *Herrera v. Lufkin Industries, Inc.,* involved at least six instances over four years plus "evidence of other ongoing harassment," including co-workers referring to the plaintiff as "the Mexican" or "the fucking Mexican" every "two or three days."  *See* 474 F.3d 675, 680-82 (10th Cir. 2007).  Even then, the evidence presented a "close question."  *See id.* at 683.

Finally, the alleged conduct before and after January 2020 involves different perpetrators.  Take the allegations concerning denied leave and other scheduling benefits.  In or about 2013, the perpetrator was A. Martinez (Dkt. 1-1, Compl., ¶ 16); in 2016, the perpetrators were C. Craven and M. Brogden (*see id.*, ¶¶ 30-34); in 2018, the perpetrator was N. Hale (*id., ¶* 36); and in 2020, the perpetrator was C. Martinez (*id.*, ¶ 53).

Plaintiff's allegations simply do not make out a plausible case for continuing, uninterrupted and related discriminatory behavior. For that reason, she does not state a claim under the continuing violation theory, and the Court should not consider the pre-2020 allegations.

### D. The post-2020 conduct does not amount to adverse employment action.

In the Motion, Defendants contend that the post-2020 conduct does not state a claim under any applicable cause of action because Plaintiff has not pled any adverse employment action. *See* Dkt. 5, Mot., 10-11. She remains employed with the same duties and conditions of employment.

Plaintiff does not respond to this argument. Instead, she makes the argument that all the conduct alleged, both before and after January 2020, taken together and cumulatively, amount to an adverse employment action. *See* Dkt. 11, Resp., 7, 9. This argument fails to seriously contend with the Motion: the Court must restrict is analysis to the timely raised post-2020 conduct.

When appropriately restricted to timely allegations, the Complaint does not state a claim on which relief may be granted. For instance, Plaintiff alleges that she was denied reimbursement for an Uber ride from her residence to Bernalillo, New Mexico. *See* Dkt., Compl., ¶ 51. But, she does not allege that similarly situated non-Black colleagues were reimbursed for commuting expenses. *Cf. id.*, ¶ 75. Elsewhere, she alleges that she was denied pay for work in her capacity as a union steward. *See id.*, ¶ 58. But, she admits that Defendants corrected the error. *See id.*, ¶ 75(h). None of these grievances amount to an adverse employment action.

## II.   PLAINTIFF'S § 1981, § 1983, FIRST AND FOURTEENTH AMENDMENT CLAIMS (COUNTS III, V, AND VI) FAIL BECAUSE HSD, ACKLIN AND MARTINEZ ARE NOT PERSONS SUBJECT TO SUIT

Plaintiff begins her response by conceding that HSD is immune from suit for Counts III, V and VI. *See* Dkt. 11, Resp., 12. She then asserts that Counts III, V and VI are actionable against Acklin

and Martinez, the individual Defendants.  These arguments are unavailing.

**A.  Plaintiff does not state a claim against the individual Defendants under § 1981**

With respect to her § 1981 claim, Plaintiff fails to address the fact that she has not alleged any facts related to the making and enforcement of contracts sufficient to state a claim for violation of § 1981. More importantly, she never addresses the fact that § 1981 does not authorize causes of action against state actors. Any claims for violations of § 1981 against state actors must be brought under § 1983. Dkt. 5, Mot., 12. *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1137 (10th Cir. 2006).

Instead, Plaintiff cites cases relying on *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454 (1975) to support her argument that she can bring claims of racial discrimination against Acklin and Martinez through § 1981.  Plaintiff's quote of *Johnson* is incomplete.  The Supreme Court held in *Johnson* that § 1981 allows claims of racial discrimination in *private* employment. *Id.* at 459-460 ("[§ 1981] on its face relates primarily to racial discrimination in the making and enforcement of contracts.  Although this Court has not specifically so held, it is well settled among the federal Courts of Appeals—and we now join them—that [§] 1981 affords a federal remedy against discrimination in private employment on the basis of race.").  The present suit involves state actors, not a private employer.

**B.  Plaintiff does not state a claim against the individual Defendants under § 1983**

With respect to § 1983, Plaintiff's response ignores the fundamental flaw in her argument: she sued Acklin and Martinez in their "official capacities" rather than their "individual capacities." Dkt. 1-1, Compl., ¶¶ 2-3, 7, and case style at 1.  State employees acting their official capacities are not subject to claims brought under § 1981 or § 1983.  Dkt. 5, Mot., 12-13.  *Pittman v. Or. Emp.*

*Dept.*, 509 F.3d 1065, 1070-71 (9th Cir. 2007); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Plaintiff's response wholly fails to address this central issue.

Instead, Plaintiff makes an unsupported assertion that Acklin and Martinez are "persons" under § 1983. However, the authority to which Plaintiff cites is not applicable to state actors, but rather local governing bodies such as municipalities and school districts. *Monell v. Dept. of Soc. Serv.,* 436 U.S. 658 (1978), and *Daddow v. Carlsbad Mun. Sch. Bd.*, 1995-NMSC-032, 120 N.M. 97, both involved the liability of school boards; not state actors.  Ironically, *Daddow* actually supports the argument of Defendants that Acklin and Martinez, sued in their official capacities, are not "persons" subject to suit through § 1983. "Under *Will,* neither the State nor state officers sued in their official capacities are 'persons' under § 1983 except in an action for injunctive relief." *Daddow*, 1995-NMSC-032, at ¶ 4. "State officials sued in their personal capacities *are* 'persons' under § 1983." *Id.*, fn. 1.  Again, Plaintiff has sued Acklin and Martinez in their official capacities, not their personal capacities.  She has thus failed to state a claim.

**C.  Plaintiff's arguments in Sections II (B), (C) and (D) are irrelevant.**

In section II(B) of her Response, Plaintiff lays out the elements necessary to show discriminatory intent.  Dkt. 11, Resp., p. 15.  She then concludes that she has stated well-pled facts to support her claim for discrimination. *Id.* Yet, Plaintiff fails to point to those well-pled facts.  Her Complaint contains nothing more than unrelated, isolated, generalized assertions of discrimination.  Again, the law upon which Plaintiff relies undercuts her argument. "Conclusory allegations of generalized racial bias do not establish discriminatory intent." *Flagg v. Control Data*, 806 F. Supp. 1218, 1223 (E.D. Penn. 1992).

Section II(C) of the Response contains only a recitation of the elements for a hostile work

environment claim under Title VII with no reference to any allegations in her Complaint. She then

cites *Bolden v. PRC Inc.,* 43 F.3d 545 (10th Cir.1994) which only supports Defendants' argument

(*supra* pp. 7-8) that her claims of harassment are unrelated, isolated, and infrequent. Plaintiff's

allegations, taken as true, do not amount to a steady barrage of opprobrious racial comments as

required by *Bolden*, 43 F.3d at 551.

Finally, in Section II(D) Plaintiff relies on *CBOCS West, Inc. v. Humphries*, 553 U.S. 442

(2008) to argue that she has stated a claim for retaliation.  The question before the Court in *CBOCS*

*West, Inc.* was whether § 1981 encompassed retaliation claims. That is not at issue here. The basis

for the Motion to Dismiss is that HSD, Acklin and Martinez are not "persons" subject to suit

through either § 1981 or § 1983.

## III.   PLAINTIFF'S FMLA CLAIM FAILS BECAUSE SHE HAS ALLEGED NO MONETARY DAMAGES

With respect to FMLA, Plaintiff again fails to address the central argument of Defendants:

she has no claim under the FMLA when she suffered no diminution of income and incurred no

costs as a result of an alleged FMLA violation. The law, which Plaintiff makes no attempt to

distinguish, is clear on this point.  *See Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278

(10th Cir. 2003).  She also fails to address *Lovely-Coley v. District of Columbia*, 255 F.Supp.3d 1

(D.D.C. 2017), discussed in Defendants' Motion. Dkt. 5, Mot., p. 15. *Lovely-Coley* is directly on

point and clearly shows that Plaintiff has failed to state a claim for relief under FMLA.

Instead, Plaintiff argues that she must only show an adverse employment action,

irrespective of monetary losses in the form of wages and benefits. She erroneously relies on

*Gonzales v. Albuquerque Pub. Sch.*, No. 11-0300-MV-WDS, 2013 WL 12329076 (D.N.M. Sept.

26, 2013) and *Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir. 1996). Neither *Gonzales* nor

*Berry* are FMLA cases. They discuss adverse employment actions under Title VII claims.

Nowhere in her Complaint does Plaintiff allege that she has suffered any monetary loss. Rather, Plaintiff makes new, previously unasserted allegations in her Response. She states, "[t]he mandated usage of the accrued leave resulted in her inability to take leave at significant times in her life: the illness and subsequent passing of her mother, holidays, and for family care instances, and forced Ms. Smiley lost hours of accrued leave (equitable relief) and lost pay (monetary relief) caused by Defendant's conduct." Dkt. 11, Resp., 18. These allegations appear nowhere in the Complaint and should be disregarded for the purposes of Defendants' Motion to Dismiss[2].

Plaintiff has not pled facts indicating that the alleged FMLA violation resulted in a monetary loss. Plaintiff therefore is not entitled to relief under the FMLA, and Count IV of the Complaint fails as a matter of law.

## CONCLUSION

For the foregoing reasons, HSD, Acklin, and Martinez respectfully request that the Court enter an order dismissing all claims with prejudice and granting Defendants any additional relief the Court believes to be necessary and just.

---

[2] *See, Glaros v. Perse*, 628 F.2d 679, 681 (1st Cir. 1980) ("in reviewing the dismissal of a complaint, our focus is necessarily limited to the allegations contained in the complaint itself." (Citations omitted)); *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 198 (7th Cir.1985) (similar); *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir. 1981) (similar); *Henthorn v. Dept. of Navy*, 29 F.3d 682, 688 (D.C. Cir.1994) (similar)

Dated: March 24, 2022

Respectfully submitted,

MONTGOMERY & ANDREWS, P.A.

By:  /s/ *Michael R. Heitz*
        Michael R. Heitz
        Kaleb W. Brooks
P. O. Box 2307
Santa Fe, NM 87504
Telephone:  (505) 982-3873
mheitz@montand.com
kwbrooks@montand.com
*Attorneys for Defendants*


## CERTIFICATE OF SERVICE

        I hereby certify that on March 24, 2022, the foregoing was electronically filed and served on all counsel of record via the Court's electronic filing system, as more fully reflected on the Notice of Electronic Filing.

AMELIA P. NELSON
ROYBAL-MACK & CORDOVA, P C.
1121 4th St. NW, Ste. 1D
Albuquerque, NM 87102
Amelia@roybalmacklaw.com
*Attorneys for Plaintiff*

                        /s/ *Michael R. Heitz*
                        Michael R. Heitz