# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

TAMIRA SMILEY,

      Plaintiff,

v.                                                                        No. CIV 22-0088 RB/JFR

NEW MEXICO HUMAN SERVICES
DEPARTMENT, DUSTIN ACKLIN,
in his official capacity with the NMHSD,
CRYSTAL MARTINEZ, in her official
capacity with the NMHSD,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      Plaintiff Tamira Smiley has worked for the New Mexico Human Services Department (NMHSD) since 2004. Smiley alleges that in 2011, she began experiencing racially based comments and conduct from coworkers and management. According to the Complaint, Defendants either ignored Smiley's complaints or grievances or retaliated against her. Smiley now brings claims against the NMHSD, Acting Human Resources Director Dustin Acklin (Acklin), and supervisor Crystal Martinez (C. Martinez) under 42 U.S.C. §§ 1981 and 1983; the Family Medical Leave Act (FMLA), 29 U.S.C. § 2612(a)(1); and the New Mexico Human Rights Act (NMHRA), N.M. Stat. Ann. § 28-1-7. Defendants move to dismiss all claims. The Court grants the motion in part and dismisses Smiley's federal claims.

**I.**      **Statement of Facts**[1]

      Smiley began working for the NMHSD on January 31, 2004, and continues to work there as a Quality Control Specialist. (Doc. 1-A (Compl.) ¶ 12.) NMHSD is a state agency. (*Id.* ¶ 6.)

---

[1] The Court recites the facts as they are derived from Smiley's Complaint and accepts them as true for purposes of this motion.

Acklin is sued in his official capacity as the Acting Human Resources Director of NMHSD. (*Id.* at 1 & ¶¶ 2, 7.) C. Martinez is sued in her official capacity as a supervisor with NMHSD. (*Id.* at 1 & ¶ 60.)

Smiley alleges that she has experienced racially motivated comments and conduct from coworkers and management since 2011. (*See, e.g.*, *id.* ¶¶ 12–70.) In 2011, Smiley's coworker, Brett Hendrickson, played a radio program in the office that contained racist comments. (*Id.* ¶ 13.) After Smiley reported this to management, Hendrickson became hostile and aggressive to Smiley by knocking her shoulder in the hallway, ignoring her, and mocking her. (*Id.*) Supervisor Adam Martinez (A. Martinez) also began to micromanage Smiley's work by questioning, chastising, and criticizing her and denied her "usage of [a] state vehicle that had been allowed for the same purposes as other state employees." (*Id.* ¶ 14.)

In 2012, Smiley filed EEOC charges against Defendant alleging race discrimination. (*Id.* ¶ 15.) Thereafter, A. Martinez denied Smiley leave or made it difficult for her to use leave. (*Id.* ¶ 16.) In January 2013 A. Martinez required Smiley to complete an ADA form when she asked for help lifting large files because she had splints on her wrists. (*Id.* ¶ 17.) In May 2013 Hendrickson told A. Martinez that he was afraid for his and his family's lives because Smiley's family members were "staring" at them and driving on the same streets. (*Id.* ¶ 18.) On May 13, 2013, NMHSD, through A. Martinez and manager Eileen Burns, "issued a Letter of Concern to Smiley based on Hendrickson's allegations." (*Id.* ¶ 19.) "On May 13, 2013, Smiley filed a grievance alleging race discrimination with [NMHSD] Human Resources, and in July 2013, following a grievance hearing[,] the Letter of Concern was rescinded." (*Id.* ¶ 20.) NMHSD also issued a report in August 2013 finding that certain office conduct "was equivalent to discrimination[] and harassment creating a hostile environment." (*Id.* ¶ 22.)

In August 2013 a coworker told A. Martinez "that she did not feel safe with the black women . . . in the office." (*Id.* ¶ 21.) In late 2013 A. Martinez accused Smiley and another black employee of placing Martin Luther King quotes in a women's restroom. (*Id.* ¶ 23.) Supervisor Mary McIntyre took the quotes down "because they 'offended some employees.'" (*Id.*) In October 2013 A. Martinez and "Burns issue a 'failed/dissatisfactory' performance evaluation to Smiley rating her as a 'does not achieve' on her evaluation." (*Id.* ¶ 24.) Smiley filed another EEOC complaint against NMHSD on November 1, 2013, alleging discrimination, harassment, and retaliation. (*Id.* ¶ 25.) "On December 12, 2013, NMHSD changed the failed final evaluation to a 1st Interim for FY14 rating period 10/2012-10/2013 with a 'does not achieve' rating." (*Id.* ¶ 26.) NMHSD then increased its micromanagement of Smiley and heavily questioned her work requests. (*Id.* ¶ 27.)

Smiley filed EEOC charges against NMHSD in early 2014 for discrimination and retaliation. (*Id.* ¶ 28.) "NMHSD increased its campaign to harass and retaliate against Smiley by treating her dismissively, ignoring her requests, denying pay for work, and isolation." (*Id.* ¶ 29.) On January 6, 2016, NMHSD employee Carolyn Craven denied Smiley's request to telework to a different office. (*Id.* ¶ 30.) On January 20, 2016, Smiley filed additional EEOC charges alleging discrimination since 2015 and retaliation. (*Id.* ¶ 31.) "On July 1, 2016, Smiley reported a pattern of discrimination and retaliation to" Craven and gave examples such as "reductions of work time, refusal to advise of individuals making complaints against Smiley, failure to confirm allegations before issuing discipline, and allegations of misusing and abusing work time." (*Id.* ¶ 32.) "There was no response." (*Id.*) Smiley requested a flex schedule several times; each time Craven or Director Mary Brogdon denied the request. (*Id.* ¶ 33.) On October 24, 2016, Craven denied

Smiley's request for telework and accused Smiley of taking long lunch breaks and arriving late to work. (*Id.* ¶ 34.)

On February 13, 2018, Human Resources employee Nathan Hale "refused to approve FMLA for Smiley for a proven qualifying serious medical condition" until her physician provided further information about the medical procedure. (*Id.* ¶ 36.) On March 1, 2018, Smiley filed a complaint with the New Mexico Wage and Labor Department. (*Id.* ¶ 37.)

In August 2018, Craven and Brogdon denied, without reason, Smiley's renewed request for a flex schedule. (*Id.* ¶ 38.) On January 18, 2019, Smiley requested a modified schedule to address family obligations and travel distance but was advised that NMHSD did not allow flex schedules despite a 2011 memorandum to the contrary. (*Id.* ¶ 40.) C. Martinez denied the request for flex time again on January 24, 2019. (*Id.* ¶ 41.) On February 7, 2019, C. Martinez directed Smiley to take her lunch break at a set time but did not require the same of her coworkers. (*Id.* ¶ 42.) On February 22, 2019, Smiley filed a grievance. (*Id.* ¶ 43.) When she did not receive a response, she filed an information request on February 27, 2019. (*Id.*) Acklin asked for an extension and then requested a meeting at a time Smiley was unavailable. (*Id.*)

"On March 21, 2019, Smiley submitted a medical relocation recommendation to [NMHSD] requesting a transfer to a working location in closer proximity to her residence." (*Id.* ¶ 44.) NMHSD employee Lora Olson "denied the medical relocation, and Smiley filed a continuing grievance" but did not receive a response. (*Id.* ¶ 45.) Acklin denied the requests for transfer on April 10, 2019, and told Smiley that she might be transferred to her previous work location if she could submit an ADA form for her medical issues. (*Id.* ¶ 46.)

On April 26, 2019, C. Martinez demanded Smiley give her details about her work hours, micromanaged her appointments and breaks during travel, and denied Smiley a lunch break. (*Id.*

¶ 47.) On August 1, 2019, Smiley filed a Public Employee Labor Relations Board (PELRB) Prohibited Practices Complaint "alleging unjustified denial of employment benefits and [NMHSD's] continued refusal to approve flex time requested and failure to respond to grievances." (*Id.* ¶ 48.) On August 21, 2019, Smiley filed a grievance against C. Martinez regarding denial of flex time. (*Id.* ¶ 49.) Acklin responded to the August 21 grievance on August 30, 2019, and said that NMHSD would approve the requested flex time. (*Id.* ¶ 50.) "In January 2020, C. Martinez denied Smiley a ride to attend a mandatory conference . . . because she did not 'feel comfortable' riding with Smiley." (*Id.* ¶ 51.) Craven stated that no one likes Smiley, and Craven and C. Martinez required Smiley to take an Uber to a meeting spot to ride with other employees to the conference. (*Id.*) NMHSD denied reimbursement for the Uber. (*Id.*)

"Each time Smiley has been approved for FMLA leave, C. Martinez required that she exhaust all paid leave in advance of unpaid leave." (*Id.* ¶ 53.) As a result, Smiley needed to send a money order to cover her insurance payment to avoid a lapse in coverage. (*Id.*) Smiley asked C. Martinez and other NMHSD Human Resources employees about the FMLA leave policy and later learned that she was not required to use paid leave before she could take unpaid FMLA leave. (*See id.* ¶¶ 54–57.)

C. Martinez denied Smiley union leave pay for time she spent assisting in union matters, despite Acklin's approval to do so. (*Id.* ¶ 58.) On February 7, 2020, one of Smiley's clients called Smiley a racial slur. (*Id.* ¶ 59.) C. Martinez witnessed this act, did nothing in response, and two months later instructed Smiley to contact the same client again. (*Id.* ¶¶ 59–60.) The client used the same slur again. (*Id.* ¶ 60.) In February 2020, NMHSD "involuntarily transferred Smiley to a new work location which was a similar distance and required more time to travel." (*Id.* ¶ 61.) "In June

2020, AFSCME Council 18 filed a PELRB Prohibited Practices Complaint against NMHSD on behalf of Smiley." (*Id.* ¶ 62.)

Smiley filed suit in New Mexico state court alleging: Count I: racial discrimination in violation of the NMHRA; Count II: retaliation in violation of the NMHRA; Count III: racial discrimination, harassment, and retaliation in violation of 42 U.S.C. §§ 1981 and 1983; Count IV: violation of the FMLA; Count V: racial discrimination in violation of the Fourteenth Amendment; Count VI: retaliation in violation of the First Amendment. Defendants move to dismiss Smiley's complaint. (*See id.* ¶¶ 71–124.) Defendants removed the case to this Court and now move to dismiss. (*See* Docs. 1; 5.)

## II.     Legal Standards

### A.     Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). The Court will "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation omitted).

## III.    The Court dismisses Counts III, V, VI.

### A.     Counts III, V, and VI are brought pursuant to § 1983.

Defendants argue that Smiley's claims brought pursuant to 42 U.S.C. §§ 1981 and 1983 fail as a matter of law, because the claims are not cognizable against state actors. (*See* Doc. 5 at

12.) Smiley names all Defendants in Counts III (for discrimination, harassment, and retaliation under §§ 1981 and 1983), V (discrimination under the Fourteenth Amendment) and VI (retaliation under the First Amendment). Defendants argue, and the Court agrees, that Smiley's civil rights claims must all be brought under 42 U.S.C. § 1983. (*See* Doc. 5 at 12–13.) Section "1983 is the exclusive vehicle for vindication of substantive rights under the Constitution." *Clervrain v. Duran*, No. 1:20-CV-1329 KWR/JFR, 2021 WL 3674783, at *3 (D.N.M. Aug. 19, 2021), *mot. for relief from j. den.*, 2022 WL 626442 (D.N.M. Feb. 14, 2022) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (Section 1983 creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution); *Bolden v. City of Topeka*, 441 F.3d 1129 (10th Cir. 2006) (claims against state actors for violation of § 1981 must be brought under 42 U.S.C. § 1983). Accordingly, "the Court construes [Smiley's] claims for violation of rights under the Constitution and § 1981 as civil rights claims brought under 42 U.S.C. § 1983." *See id.*

    **B.    Smiley's § 1983 claims are not cognizable against the NMHSD or the state actors in their official capacities.**

Smiley names NMHSD, a state agency, and Acklin and C. Martinez in their official capacities. (*See* Compl. at 1 & ¶ 6.) As a state agency, the NMHSD is not a "person" within the meaning of § 1983 and thus is not a viable entity to be sued. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Chavez v. N.M. Hum. Servs. Dep't*, No. CV 02-1080 MCA/DJS, 2002 WL 35649645, at *2 (D.N.M. Oct. 30, 2002). Smiley does not disagree. (*See* Doc. 11.)

The same holds true for Acklin and C. Martinez who are named in their official capacities. Suits against a defendant in an official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991)

(quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Id.* (citing *Graham*, 473 U.S. at 166); *see also Ross v. Bd. of Regents of Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983" and are thus "not subject to suit under § 1983") (citations omitted). Suits against a defendant in a personal (or individual) capacity, "on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U.S. at 25.

Smiley does not cite any authority to contradict Defendants' argument but merely asserts that "the individually named defendants are persons." (Doc. 11 at 14.) Smiley misses the point of suits against state actors in their "official" versus their "personal" capacities. She specifies in the Complaint that she brings claims against Acklin and C. Martinez in their *official*—not in their individual or personal—capacities. (*See* Compl. at 1 & ¶ 6.) As explained above, "when sued solely for money damages, as" Smiley seeks in Counts III, V, and VI (*see* Compl. ¶¶ 98, 118, 124), "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Jackson v. N.M. Pub. Def.'s Off.*, 361 F. App'x 958, 963 (10th Cir. 2010) (citing *Will*, 491 U.S. at 71; *Hafer*, 502 U.S. at 26). Smiley's claims against NMHSD and against Acklin and C. Martinez in their official capacities are not viable as a matter of law and are dismissed with prejudice. If Smiley intends to bring the claims against Acklin and C. Martinez in their individual capacities, she must file a motion to amend her complaint to add those claims.

### IV. The Court dismisses Count IV.

In Count IV, it appears that Smiley brings an interference claim under the FMLA on the basis that NMHSD required her to work full-time even though she was on "intermittent FMLA leave" with reduced hours. (Compl. ¶ 103.) She also alleges a retaliation claim under the FMLA

and asserts that "C. Martinez chastised, micromanaged, and humiliated Smiley for her workload and completion[,]" and NMHSD later involuntarily transferred her to an undesired location because of her FMLA leave. (*See id.* ¶¶ 104–06.)

Defendants argue that any FMLA claim fails because Smiley has not alleged facts to show monetary damages. (Doc. 5 at 15–16.) Recovery under the FMLA is "unambiguously limited to actual monetary losses . . . ." *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1277 (10th Cir. 2001) (citations omitted). Thus, "courts have consistently refused to award FMLA recovery for such other claims as consequential damages[,] emotional distress damages[,]" and nominal damages. *Id.* at 1277–78 (internal and subsequent citations omitted). Here, Smiley alleges that she has suffered "humiliation and damages including lost wages, mental anguish, fees[,] and costs." (Compl. ¶ 108.) Defendants argue that "[a]side from conclusory statements within her claims for relief, [Smiley] pleads no facts indicating that she has suffered any monetary loss as a result of the alleged FMLA violations." (Doc. 5 at 16.) Smiley reiterates in her response that she suffered loss of accrued leave and pay, but she does not explain what comprised those losses outside of the paid leave that Defendants forced her to take before they allowed her to take unpaid leave under the FMLA. (*See* Doc. 11 at 18.)

Defendants contend that the forced use of accrued paid leave is not compensable as monetary damages under the FMLA. (Doc. 16 at 17.) Defendants cite *Lovely-Coley v. District of Columbia*, 255 F. Supp. 3d 1 (D.D.C. 2017), a case with a similar fact pattern. In *Lovely-Coley*, an employee alleged that her employer's "conduct deterred [her] from taking FMLA leave—thereby compelling her to use sick and annual leave hours . . . ." 255 F. Supp. 3d at 11 (quotation omitted). She brought suit under the FMLA and sought the monetary value of the sick and annual leave she used. *Id.* at 10. The court found that the FMLA claim could not stand because the plaintiff could

9

not prove monetary damages. *Id.* at 12. "By taking her personal sick and annual leave balance . . . , the plaintiff received monetary compensation for her leave." *Id.* "Had she taken her FMLA leave, which would have been without pay, the plaintiff would not have received any compensation." *Id.* (citations omitted). "Thus, the [employer's] alleged interference did not cause the plaintiff any loss of compensation." *Id.* (quotation marks, brackets, and citation omitted). And even if the plaintiff was entitled to relief for the use of her sick/annual leave hours, whether through monetary damages, "such as the value of each hour of leave [the plaintiff] unnecessarily used or" an equitable remedy, "such as the restoration of [her] annual and sick leave hours," the court found that the plaintiff would then be required to reimburse the employer "for the compensation she received for taking her paid annual and sick leave." *Id.* (internal and subsequent citations omitted).

Smiley does not directly address Defendants' argument regarding compensable monetary damages. (*See* Doc. 11 at 17–19.) Instead, she asserts that she adequately alleged "adverse employment action" by showing "a significant change in her employment and benefits . . . ." (*Id.* at 18.) She cites *Gonzales v. Albuquerque Public Schools*, No. CV 11-0300 MV/WDS, 2013 WL 12329076, at *10 (D.N.M. Sept. 26, 2013), for the theory that an "adverse employment action" is "not limited to monetary losses in the form of wages or benefits . . . ." (*See* Doc. 11 at 18.) Yet the plaintiff in *Gonzales* did not assert any claims for relief under the FMLA, but rather under § 1983 for violations of her rights under Title VII and the Fourteenth Amendment. *See* 2013 WL 12329076, at *1. Smiley cites no authority to refute the proposition that recovery under the FMLA is "limited to actual monetary losses . . . ." *Walker*, 240 F.3d at 1277.

Nor does Smiley attempt to refute or distinguish the finding in *Lovely-Coley*. (*See* Doc. 11 at 17–19.) Although *Lovely-Coley* is not binding on this Court, the undersigned finds its reasoning persuasive. Like the plaintiff in that case, Smiley's only real "monetary" loss here is the paid leave

10

C. Martinez mistakenly forced her to take before she could take unpaid FMLA leave. Assuming she states a valid FMLA claim, she does not show that she is entitled to monetary damages. As in *Lovely-Coley*, even if Smiley received reinstatement of her paid leave hours or the value of those hours, she would then need to reimburse the NMHSD for the compensation she received when she initially took the paid leave. "Otherwise, [she] would receive a windfall in regards to the amount of compensation she was entitled to receive . . . ." *Lovely-Coley*, 255 F. Supp. at 12. Smiley fails to respond to this issue and the Court declines to mount an argument on her behalf.

Smiley's conclusory allegations of damages (*see* Compl. ¶ 108) are insufficient to show that she has incurred monetary damages for any alleged FMLA violation under these circumstances. Accordingly, the Court will dismiss her claims under the FMLA.

## V.     Conclusion

The Court grants Defendants' motion to dismiss Smiley's federal law claims. Dismissal of the FMLA claim in Count IV is appropriate because Smiley fails to sufficiently allege monetary damages under the FMLA. *See Walker*, 240 F.3d at 1277. Smiley's claims under § 1983 (Counts III, V, and VI) are not viable because she names a state agency and Acklin and C. Martinez only in their official capacities.

Because the Court dismisses Smiley's federal claims, it will not take up Defendants' arguments regarding her state law claims at this time. Should Smiley wish to pursue her § 1983 claims against Acklin and C. Martinez in their individual capacities, she must move to amend within seven days of this Opinion. If she fails to so move, the Court will decline to exercise supplemental jurisdiction over her remaining state law claims and will remand this matter to the state court.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss All Counts of the Complaint (Doc. 5) is **GRANTED IN PART**: Smiley's federal claims under § 1983 in Counts III, V, and VI against NMHSD and Acklin and C. Martinez in their official capacities are **DISMISSED WITH PREJUDICE**; Smiley's claim under the FMLA is **DISMISSED WITHOUT PREJUDICE**. Defendants' motion is otherwise **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Smiley has **seven days** from the filing of this Opinion to file a motion to amend. If Smiley files a motion to amend, Defendants shall file an appropriate response pursuant to Rule 15(a)(3) within **21 days** after Smiley files her amended complaint.[2]

Should Smiley fail to file a motion to amend, the Court will **remand** this matter to the state court.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE

---

[2] The Court gives Defendants leave to refile any issues left undecided, including arguments regarding the state claims under the NMHRA and whether Smiley adequately states a claim for retaliation under the First Amendment.